[S. F. No. 8466.   In Bank.—October 1, 1917.]

## WILLIAM EVARTS, Appellant, v. J. H. WEISE, Respondent.

Elections — Contest — Recounting Ballots—Presumption.—Where ballots from a precinct have been counted before the court in an election contest, they become a part of the record of the contest, and, in view of the presumption that official duty has been regularly performed, raised by Code of Civil Procedure, section 1963, subdivision 15, they are presumed to have been properly safeguarded by the clerk of the court and preserved intact and in the same condition in which they were found by the court when first taken out of the sealed package and counted, and in the absence of anything in the record to dispel this presumption, the trial court does not commit error by overruling objections to the recounting of the ballots.

Id.—Recounting of Ballots not Prohibited—Powers of Court.—If the trial court by which an election contest is heard is not satisfied with a count of the ballots before it, there is no reason, legislative or judicial, why it may not cause such ballots to be counted again so as to satisfy itself that no mistake has been made before it in the counting.

Id.—Ballots—Marks not Identifying.—Where some of the ballots are marked in the voting spaces with crosses larger than those ordinarily used at elections and appearing as though they might have been made with the blunt end of some article like a pen or pencil-holder, but there is no evidence disclosing the size or character of the stamp supplied by the election officers, and no evidence extrinsic to the ballots themselves showing or tending to show that the manner of marking the ballots was intended by the voters as a means of facilitating an identification of the ballots, it cannot be said that the rulings of the trial court allowing them to be counted were erroneous.

Id.—Marks Caused by "Offset" in Folding.—A mark in the form of the upper half of a cross made apparently by an offset from folding the ballot when the stamping ink was not dry does not require the rejection of a ballot.

Id.—Crosses Opposite Names of Two Opposing Candidates.—A ballot showing crosses opposite the names of two opposing candidates is properly not counted for either.

Id.—Impression Caused Probably by Offset.—Where a ballot was distinctly marked with a cross opposite the name of one candidate but there was a slight impression opposite the name of the other candidate, which might have been due to an offset in folding, it was not error to count the ballot in accordance with the distinct impression.

ID.—MARKS NOT INTENDED FOR IDENTIFICATION.—Where a ballot was marked with a cross in the printed space for the name of a candidate and also in the voting space opposite the same candidate's name, but there was nothing to indicate that the former mark was intended as an identification mark, the ballot was properly counted.

ID.—POSSIBLE ERRORS OFFSETTING EACH OTHER.—Where the rejection by the court of a ballot for the successful candidate was equalized by the rejection of a ballot for the contestant similarly marked, the possible errors offsetting each other are unnecessary to be considered.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmett Seawell, Judge.

The facts are stated in the opinion of the court.

G. P. Hall, and E. J. Dole, for Appellant.

W. F. Cowan, W. H. Early, and A. H. Crook, for Respondent.

THE COURT.—In this case, a hearing here was ordered by this court after decision by the district court of appeal of the third appellate district, solely because of what was said by that court as to the last ballot discussed as involved in "Plaintiff's Exception No. 5." In all other respects we are satisfied with the opinion of the district court of appeal, which was filed in that court July 9, 1917 (*post,* p. 220, [168 Pac. 122]), and adopt the same as the opinion of this court.

As to the one ballot referred to above, one for Evarts which was rejected by the trial court, it appears from the record that the rejection was solely because of the conclusion of the trial court that it was not sufficiently shown that the ballot had ever been voted. It is unnecessary to consider whether the trial court erred in this conclusion, for the record also shows that at the same time another ballot, one for Weise, as to which the situation was the same, was likewise rejected for the same reason. If error was committed as to one, which we do not decide, it was likewise committed as to the other, and one offset the other.

The judgment is affirmed.

The following is the opinion of the district court of appeal of the third appellate district, rendered on July 9, 1917, referred to in the above opinion of the supreme court:

HART, J.—Evarts and Weise were rival candidates for the office of supervisor for the first supervisorial district of Sonoma County at the general election held in the month of November, 1916. The board of supervisors of said county, acting as a canvassing board, upon canvassing the returns, ascertained that Weise had received 1,286 votes and Evarts 1,281 votes at said election for said office, and thereupon and accordingly officially declared that the former had been elected thereto, and issued to him a certificate of election. The appellant thereupon instituted this action for the purpose of contesting the purported election of the respondent and, upon a trial thereof, in which a recount of the ballots was had, the trial court rendered judgment that the contestant and contestee each received at the election an equal and the highest number of legal votes cast thereat for supervisor for said supervisorial district, ''and that the contestant take nothing by his action and proceeding and the same is hereby dismissed, and each party hereto is directed to pay his own costs herein incurred.''

This appeal is by Evarts from said judgment, his general contention being that the court erroneously rejected certain ballots which should properly have been counted for him, and that certain ballots which should have been rejected were likewise ordered counted for Weise. Evarts further contends that the court committed error and transcended its jurisdiction in again canvassing the returns and counting the ballots of a certain precinct after a count thereof had already once been had at the trial.

It is deemed the more orderly, although not in the order in which the alleged error involved therein occurred at the trial, first to consider the point last above stated.

After the canvassing of the returns and the counting of the ballots had been completed, whereby it was made to appear that Evarts had received 1,286 and Weise 1,284 votes, thus showing that the former had received the highest number of votes and had, therefore, been elected, Mr. Early, of counsel for the respondent (Weise), addressing the court, called attention to the fact that, in counting the ballots of Elmore precinct before the court on the preceding day, ''Weise went from 71 to 69 and Mr. Evarts went from 101 to 103, and that that must have been due to some irregularity in the count here. We have had a great amount of doubt about it. It

is a small precinct. We are all here now. We would feel better if we could go through and count it again." The court thereupon declared that "if there is any doubt about the count, bring them [the ballots] in and we will count them again." After considerable discussion over the objections of counsel for Evarts against a recount of said ballots, the court overruled said objections and ordered and caused the ballots of said precinct to be recounted, the result being the same as was shown by the original count before the court. On the following morning the court ordered another recount of the ballots of said precinct. The result of the last recount disclosed that Evarts had received 101, instead of 103, as shown by the previous counts, and Weise 71, in lieu of 69, as likewise shown.

The specific objections to the recounting of said ballots were: That said ballots "are not sealed in the original sealed package, that they have been, open since being officially counted, and out from under the jurisdiction of the court; that there was no objection to the registering of that vote as shown by the official count, and that all of the objections to this official count were made after the count has been made and accepted by the attorneys for the plaintiff and the defendant without any objection on the part of either."

So far as the record shows to the contrary, the contestant made no attempt to support the objection that the ballots recounted were not resealed immediately after they were first counted in court, or that they were in any manner tampered with after that event. Necessarily, in order to count them in this proceeding, the ballots had to be removed from their original sealed package; and so having necessarily been made a part of the record of the contest, presumptively they were, after being counted in court, committed to the custody of the clerk of the court, where then they properly belonged, and presumptively that officer properly safeguarded and preserved them intact, or in the same condition in which they were found by the court when first taken out of their sealed package to be counted in this proceeding. (Code Civ. Proc., sec. 1963, subd. 15.) The appellant having objected to the recounting of the ballots on the ground stated, the burden was upon him to dispel such presumptions. He made no attempt to do so.

Counsel have directed our attention to no law, legislative or judicial, which interdicts the counting of ballots in an election contest before a court after such ballots have therein once before been counted. We can perceive no objection to such a procedure. If the trial court by which the contest is heard is not satisfied with a count of the ballots before it, we can see no reason why it may not cause such ballots to be again counted so as to satisfy itself that there has been made before it no mistake in the counting. In this case, the original and second counts of the ballots of Elmore precinct disclosed a discrepancy between those counts and the result of the canvass of the board of supervisors as against Weise and in favor of Evarts, the former losing two and the latter gaining a like number of votes as against the result shown in each case by the official count by the board of supervisors. The court was authorized to make such an investigation as would satisfy and convince it of either one of the two propositions suggested by the situation so presented, viz.: Whether, in counting the Elmore votes, a mistake had been made by the court or whether, in totaling the returns from said precinct, the supervisors had made a mistake, whereby Weise had been given more and Evarts fewer votes than each was entitled to.

The ballots, the counting or rejection of which constitutes the general ground of the several specific objections pressed upon us by the appellant, are classified into three groups, and are so considered in the briefs. We find it convenient to follow that course in our review of the objections to said ballots.

### Group No. 1.

This group consists of five ballots which contain a cross in the proper space opposite the name of the candidate appearing on the said ballots voted for by the persons casting the ballots. Three of these ballots were ordered by the court to be counted for Weise and two for Evarts, and the ground of objection to all of them was the same, to wit: That the mark in the square opposite the name of the supervisorial candidate so sought to be voted for was not made with the voting stamp provided by law. These objections were made by both the contestant and contestee—that is to say, where the mark was placed in the space opposite the name of Weise,

the contestant·objected to the ballot, and where made in the space opposite the name of Evarts, the contestee objected.

We cannot say that the court erred in ordering the said ballots to be counted as·indicated. The ballots are marked with a cross, but the cross is larger than that which is made by the stamp ordinarily seen in use at elections. In nearly every instance, the cross on the ballots objected to appears as though it might have been made with the blunt end of some article, as the butt end of a pencil or penholder, and the ink is more or less smeared in the voting space. Yet we cannot say, from the mere appearance of the ballots, and in the absence of evidence *dehors* the ballots themselves showing or tending to show by what means the marks were made, that said marks or crosses were not produced by means of a stamp furnished by the officers charged with the duty of furnishing voting stamps and other supplies necessary to be used in election booths at elections. (Pol. Code, sec. 1205.) There is no evidence in the record disclosing the size or character of the stamps used in the several precincts in which the ballots in question were cast. So far as we are otherwise advised by the record, the stamp actually furnished by said officers and used in marking each of said ballots might have been larger than the stamp which we may assume is usually put to such a use; and it may be, so far as we can know or say to the contrary, there being no evidence as to the kind of stamps, if any, used in marking these ballots, that such stamps were old and had been worn down from use, so that smooth and unbesmeared impressions could not be produced by them. At any rate, as stated, the mark made in the spaces of the ballots is plainly a cross, and we do not see how we can say on the record as it appears before us that it was not made with a voting stamp regularly furnished by the proper officer ·to be used in the booth by the voters for the purpose of marking their ballots. Nor can·we hold that the cross or mark as it appears upon the ballots and as it is above described constitutes a distinguishing mark. All the marks upon the five ballots, it should be explained, are substantially the same or of the·same general character. In other words, each voter marked or stamped his ballot in the same general manner, and all the ballots are substantially alike in the character of the stamp used or the means employed in marking them.

Subdivision 4 of section 1211 of the Political Code provides: "No mark upon a ballot which is unauthorized by this act shall be held to invalidate such ballot, unless it shall appear that such mark was placed thereon by the voter for the purpose of identifying such ballot."

In construing the above provision, which was, by amendment, added to section 1211 by the legislature of 1903, the supreme court has said: "The effect of the amendment is that, where there is no evidence whatever before the trial court, other than the ballot itself, unless such ballot is so marked as to warrant an inference by the trial court that the marking was designedly made by the voter for the purpose of identifying his ballot, the ballot must not be rejected on the ground that it bears a distinguishing mark." (*Turner* v. *Wilson,* 171 Cal. 600, 603, 604, [154 Pac. 2, 4]. See, also, *Sweetser* v. *Pacheco,* 172 Cal. 137, [155 Pac. 639].)

There was in this case no evidence produced before the trial court, extrinsic to the ballots themselves, showing or tending to show that the manner of marking the ballots or of making the cross thereon was intended by the voters as means of facilitating an identification of the ballots as those voted by the voters voting them. As before stated, the markings on the respective ballots were substantially or approximately uniform in form and style, the ink spreading a little more in some of the voting spaces than in others, but each representing a cross.

We cannot say from the record so far as it bears upon the ballots in question that the rulings of the court below that said ballots were entitled to be counted are erroneous.

### Group No. 2.

1. Plaintiff's Exception No. 3 involves an objection to a ballot counted for Weise and which, in addition to a cross stamped in a voting space opposite Weise's name, bears a mark in the large space on the ballot just below the names of Weise and Evarts, and which has the appearance of being the upper half of the cross on the voting stamp, thus: V The objection to this ballot was that the mark as indicated constituted an identifying or distinguishing mark. The trial court held that the said mark was an offset, and overruled the objection. Although the particular point on the ballot where the said mark was made or is to be found does not,

when the ballot is folded, precisely correspond or come in contact with any of the marks properly in the voting spaces above it, we think it is very clear that the said mark or impression must have been made while the voter was in the act of folding the ballot. This could easily occur in the act of folding by sliding one-half of the ballot over the other half in the first fold, thus causing, before the ends of the two parts of the ballot had been adjusted evenly, the lower part, where the mark complained of is located, to come in contact with the upper part, where the cross in the voting spaces was stamped, the ink used in stamping not then being entirely dry. We think this ballot was properly counted for Weise.

2. Plaintiff's Exception No. 6 is addressed to a ballot whereby the voter seemingly attempted to vote for both the appellant and the respondent, there having been stamped a voting cross in each of the voting spaces opposite the names of the said parties, one opposite that of the appellant and the other opposite that of the respondent. The impression of the cross or stamp in each space is clear and distinct. The court rejected the ballot and refused to order it counted for either candidate, and properly so, as obviously, it cannot be told therefrom for which of the two candidates the voter intended to vote, if, indeed, he really intended to vote for either.

3. Plaintiff's Exception No. 7 relates to a ballot on which there is a distinct impression of the cross opposite the name of Weise and a slight impression thereof opposite that of Evarts. By folding the said ballot according to the crease therein which was undoubtedly caused by the first fold of the ballot by the voter, the stamp opposite the name of Weise strikes or comes in contact with the voting space opposite the name of Evarts and precisely where the slight impression of the cross is located in the latter space. The court below held the mark opposite the name of Evarts to be an offset, and accordingly the ballot was counted for Weise. The physical appearance of the ballot seems to sustain that conclusion. At any rate, we cannot say that the ruling is erroneous.

### Group No. 3.

1. Plaintiff's Exception No. 2: On this ballot appears the impression of the voting stamp or cross both in the space in which the name of Weise is printed and in the voting space

directly opposite the name of Weise. There is nothing to indicate that the mark in the space in which Weise's name is printed was intended as an identifying mark. The ballot was therefore properly counted for Weise. (*Turner* v. *Wilson*, 171 Cal. 600, [154 Pac. 2]; *Sweetser* v. *Pacheco*, 172 Cal. 137, [155 Pac. 639].)

2. Plaintiff's Exception No. 5 refers to a ballot on which the voter made a cross with a lead pencil and also a cross with the voting stamp in the voting space opposite the name of Evarts. The two marks are distinct. The ballot was rejected, and properly so under the ruling in the cases above cited.

Several other ballots were sent up with the record, but no point is made in the briefs as to them. We are therefore not called upon to examine said ballots.

There are no other matters which have been submitted here for consideration and decision, and, agreeably to the views above expressed, the judgment is affirmed.

Burnett, J., and Chipman, P. J., concurred.