[Sac. No. 1141.  In Bank.—December 23, 1903.]

L. J. MADDUX, Respondent, v. J. M. WALTHALL, Appellant.

ELECTIONS—CONTEST FOR PUBLIC OFFICE—POWER OF LEGISLATURE.—Although the public is interested in the legality of elections, and in seeing that offices be filled by eligible citizens properly chosen, yet it is competent for the legislature to authorize any elector to take the proper steps to determine these questions, and the fact that the contesting elector has a personal interest in the result, as claiming the right to the office for himself, cannot affect the validity of the law.

ID.—TRIAL BY JURY—WAIVER.—Without deciding whether trial by jury is proper in an election contest, any right to such trial is waived where no demand therefor was made until after the trial was commenced.

ID.—MARKED BALLOTS—STAMP AFTER WORDS "NO NOMINATION."—Ballots stamped after the words "No nomination" are illegal and void,

as having a distinguishing mark. The number of ballots so marked cannot affect their invalidity; and evidence is not admissible to show that by reason of the number of ballots so marked it ceased to be a distinguishing mark.

ID.—VIOLATION OF PURITY OF ELECTION LAW BY CONTESTANT—INSUFFICIENT DEFENSE.—The court did not err in refusing to allow the contestee to urge in defense that the contestant had violated the Purity of Election Law. That question is to be determined in a separate proceeding for the infliction of the penalties provided therefor.

APPEAL from a judgment of the Superior Court of Stanislaus County. William O. Minor, Judge.

The facts are stated in the opinion of the court.

Dennett & Walthall, E. A. Belcher, and J. C. Needham, for Appellant.

L. J. Maddux, for Respondent.

HENSHAW, J.—This was an election contest instituted under sections 1111 et seq. of the Code of Civil Procedure. The court rejected the ballots in the senatorial and assembly squares of the Republican ticket containing a cross after the words "No nomination." The result of the recount was, that the contestant received the greater number of legal ballots, and was declared elected. The contestee appeals.

Upon his appeal he urges that the proceeding provided for by the sections of the code above cited is unconstitutional. In substance his argument is, that, as a public office is a public trust, and as the public is interested in the legality of elections, and in determining who shall occupy an office, and as an individual is but a member of the public, he can have no resort to a private action such as this to redress his real or fancied wrongs. Hence it is contended that such an action must be prosecuted by, and on behalf of, and in the name of, the people of the state of California. We are not referred to any authority in support of this contention which seeks to overthrow a procedure which has been upon our books since 1853, and which has been recognized by this court upon numberless occasions. It is undoubtedly true that the public is interested in the legality of elections,

and in seeing that offices are filled by eligible citizens properly
chosen. At the same time, however, it is perfectly competent
for the legislature to do as it has done in this instance, and
authorize any elector to take the proper steps for the de-
termination of these questions. The fact that the contesting
elector may have, and frequently has, some especial personal
interest by reason of the fact that he claims the right of
office for himself does not and cannot militate against the
validity of the law.

To the further objection that these sections are unconsti-
tutional because they do not provide for the right of trial by
jury, and that the court erred in refusing the contestee a
trial by jury in violation of the constitution, it is sufficient
to say, that if it be conceded—though it is not hereby de-
cided (see *Kennard* v. *Louisiana,* 92 U. S. 480)—that a
trial by jury in such a proceeding may be had in a
proper case, in this particular instance the refusal of the
court to grant such a trial was perfectly proper. In the
first place, the demand was not made until after the trial had
commenced, and, in the second place, as appears by the stipu-
lation of the parties and by the record in the cause, no ques-
tion of fact was involved which could have been submitted
to a jury. This appears from the stipulation of the parties
to the effect that, "if the ruling of the court in not counting
the ballots with such cross after 'No nomination' was error,
then the judgment should be reversed, but that, if the court
was correct in excluding such ballots, then the contestant
received the majority of the remaining ballots."

There was thus presented, the marking of the ballots being
admitted, the legal question as to whether or not the ballots
so stamped carried upon their face a distinguishing mark.
That such a mark is prohibited and renders the ballot illegal
and void, has been repeatedly decided. (*Farnham* v. *Boland,*
134 Cal. 151; *Salcido* v. *Roberts,* 136 Cal. 670; *Patterson* v.
*Hanley,* 136 Cal. 265; *People* v. *Campbell,* 138 Cal. 11; *Tay-
lor* v. *Bleakely,* 55 Kan. 1.[1]) The manner of stamping the
ballot is provided by the statute, and is mandatory. (*Tebbe*
v. *Smith,* 108 Cal. 101.[2]) "No voter shall place any mark
upon his ballot by which it may be afterwards identified as

---

[1] 49 Am. St. Rep. 233, and note.     [2] 49 Am. St. Rep. 68.

the one voted by him." (Pol. Code, sec. 1215.) The rule is, and has often been declared, that an illegal mark upon the ballot, or a legal mark illegally placed, which may serve as a distinguishing mark, will invalidate the ballot, and that the intent of the voter cannot be shown other than by what appears upon the face of the ballot. (*Rutledge* v. *Crawford*, 91 Cal. 632;[1] *Lauer* v. *Estes*, 120 Cal. 652.)

In this case, however, the contestee asked the trial court to admit evidence, and to say that, because of the number of ballots so marked, this admittedly illegal mark did not and could not identify the ballots, and so ceased to be a distinguishing mark. But to do this would result in the absolute destruction of the rule, and leave each case involving this question to be decided, not as a matter of law, but as a discretionary matter resting with the trial judge. Either the rule must be adhered to, that a legal mark illegally placed upon the ballot by a voter, or an illegal mark made by the voter which may serve as a distinguishing mark, invalidates the ballot, as the code declares, or there is no rule whatever touching the matter, and the mandatory provisions of the ballot law are at once annulled.

It is finally urged by the contestee that the court erred in refusing to allow him to allege as part of his defense a violation of the Purity of Election Law upon the part of the contestant. In this the court did not err. An election contest such as this is a special statutory proceeding designed to contest the right of a person "declared elected" to enter into and hold office. (*Austin* v. *Dick*, 100 Cal. 199.) It was never designed that the contestee might prevent a determination as to his right of office by showing that the contestant himself had violated certain laws and was himself therefore not entitled to the office. The proceeding may be instituted by any elector. The only matters of inquiry for the court are those prescribed in subdivisions 1, 2, 3, and 4 of section 1111 of the Code of Civil Procedure, unless the *person "declared elected"* by the canvassing board is charged with a violation of provisions of the Purity of Election Law, in which event it may be that the court may hear and determine such charge. That question is not, however, here involved, and we do not de-

[1] 25 Am. St. Rep. 212.

cide it. (See Purity of Election Law, sec. 12; Stats. 1893, p 19.) By section 1123 it is the duty of the court to declare any other person elected (and this person may be neither the contestant nor the contestee) if the result of the recount should so disclose. If the person so declared elected by the court shall in truth have violated any of the penal provisions of the Purity of Election Law, that is properly a matter for determination in a separate proceeding. These provisions of the Purity of Election Law are highly penal. They are designed, as the name of the law implies, to protect and preserve the purity of the ballot. The punishments meted out for violations of the provisions of these laws are for the most part punishments for felonies. The deprivation of office of a successful candidate who has been guilty of election abuses is but an incident to the punishment which the law imposes.

For the foregoing reasons the judgment appealed from is affirmed.

Van Dyke, J., Angellotti, J., and McFarland, J., concurred.

SHAW, J., concurring.—I concur in the judgment. With respect to the ballots upon which crosses appear in the square or space after the words "No nomination," I concur, because I regard the proposition that such crosses constitute a distinguishing mark as the settled law of this state, under the decisions cited in the main opinion. As the legislature of 1903 changed the form of the ballot so that those words will not appear on the ballots in future elections, the matter ceases to be of sufficient prospective importance to justify further consideration, even if the principle of the cases were considered as unsound.

This proposition being established, there can be no modification of it on the ground that there happens to be so many similarly marked ballots in a single precinct that it is not possible to identify any one of them as the ballot of a particular voter. The principle underlying the decisions referred to must be that the statute is to be considered as declaring each of such marked ballots void, because, as the mark is purposely made, there is an intent presumed by law on the part of each voter, at the time he casts it, to mark it for identification. This presumed intent is not affected, nor can

it be disproved, by showing other facts, necessarily unknown to the voter at the time, which tend to, or actually do, for that purpose make futile the act from which the intent is presumed. Hence, it is not material to show by a display of the ballots after the polls are closed, that so many other voters used the same mark that it failed to afford the means of identification which the law conclusively presumes the voter intended. It is the conclusive presumption of the law as to the intent of the voter by an illegal mark purposely made, and as to the effect of such illegal mark, which renders the ballot invalid, and not the actual intent, or absence of intent, of the voter, nor the actual effect of the mark to give the means of identification.

I do not mean to say, however, that where marks are found on a ballot which, if purposely made, might serve to identify it and make it void, but where the mark itself, or other appearances on the face of the ballot, shows that such mark was made accidentally, or unconsciously, and not with intent to mark or identify the ballot, the voter is to be thereby disfranchised and the ballot so marked declared invalid.