[Civ. No. 1473.   First Appellate District.—June 30, 1914.]

## A. M. FITZSIMMONS, Respondent, v. JOSEPH WILKS, Appellant.

ELECTIONS—INTENTION OF VOTER—ASCERTAINMENT FROM BALLOT ALONE. As a general rule the intent of a voter must, in the first instance, be ascertained from the ballot itself, and such intent cannot, by proof of extrinsic circumstances, be shown to be other than that plainly and unequivocally expressed upon the face of the ballot.

ID.—EXTRINSIC CIRCUMSTANCES—ADMISSIBILITY TO SHOW INTENT OF VOTER.—But this rule is subject to the exception that where the. intent of the voter is doubtful, the ballot must be construed as any other paper writing, and therefore evidence of facts and circumstances of public notoriety concerning the candidates and connected with the election may be resorted to for the purpose of ascertaining the voter's intention.

ID.—BALLOTS BEARING ONLY SURNAME OF CANDIDATE—WHETHER MAY BE COUNTED—FACTS AND CIRCUMSTANCES.—Ballots cast at a special election to fill the office of justice of the peace, upon which the voters, in writing in the name of a candidate, merely wrote his surname, are properly counted, if it appears that he was the only avowed, known, and active candidate by that name for the office, and

that the only other persons of that name residing in the township were his wife and two sons, who all endeavored to accomplish his election.

APPEAL form a judgment of the Superior Court of Monterey County.  B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Daugherty & Lacey, and S. W. Mack, for Appellant.

H. C. Jorgensen, for Respondent.

LENNON, P. J.—At a special election held in Pacific Grove township, Monterey County, the plaintiff and defendant were candidates for the office of justice of the peace in the event that the then incumbent of the office should be recalled.  The election resulted in the recall of the then incumbent, and upon a canvass of the returns, the defendant was declared elected to the office for the unexpired term. Subsequently plaintiff instituted proceedings in the superior court of Monterey County, under the provisions of part III, title II of the Code of Civil Procedure, contesting the right of the defendant to the office.  The lower court rendered and entered judgment in favor of the plaintiff, declaring him to have been elected to the office, and directing that a certificate to that effect be issued to him by the county clerk.  The defendant has appealed from the judgment.

A recount in open court of the admitted legal ballots cast at the election in question disclosed beyond dispute that one hundred and seventy-six votes were cast for A. M. Fitzsimmons, the plaintiff; two hundred and seventeen for Joseph Wilks, the defendant; and three votes for one R. M. Fitzsimmons.  In addition, however, to the undisputed ballots, the recount showed that there were forty-nine ballots cast at the election, bearing merely the surname "Fitzsimmons," which, over the objection of the defendant that it was impossible to ascertain for whom they were intended, were admitted in evidence and counted for the plaintiff, thereby increasing his total vote to two hundred and twenty-five, and giving him a majority over the defendant of eight votes. The correctness of the court's ruling in counting these particular ballots is the only point presented for review.

We are of the opinion that under all of the particular and peculiar facts and circumstances surrounding the election in controversy, the lower court did not err in the ruling complained of.

Those facts and circumstances, as revealed by the bill of exceptions accompanying the judgment-roll, may, in so far as they are pertinent to the point under discussion, be briefly stated as follows: The plaintiff became a candidate for the office in question by simply making an announcement of his candidacy and personally soliciting the support of voters throughout the township in which the election was held. His candidacy was announced daily for a period of about thirty days preceding the election, in two daily newspapers printed and published in Monterey County, and which had in the aggregate a regular daily circulation of four hundred and ninety-five copies in the township in which the election was held. Prior to and at the time of the election, there were but four persons bearing the surname Fitzsimmons residing in the township, all of whom were duly registered electors and eligible to the office of justice of the peace. They were the plaintiff, A. M. Fitzsimmons, his wife, Mary J. Fitzsimmons, and his two sons, R. M. Fitzsimmons and E. W. Fitzsimmons. The plaintiff, however, was the only one person of the name of Fitzsimmons who sought the office in question and announced his candidacy therefor; and all the aforesaid members of his family sought and endeavored to bring about his election. The surname Fitzsimmons was written upon each of the forty-nine ballots in question by the voter casting the same. It does not appear in the bill of exceptions or elsewhere in the record how or in what manner the defendant became a candidate for the office in question; that is to say, the record before us does not show whether the defendant was nominated for that office by petition or otherwise, or whether he, as did the plaintiff, merely announced his candidacy and trusted to the voters to write his name upon the ballots. Incidentally it appears that R. M. Fitzsimmons, who, notwithstanding that he was not a candidate for the office, received three votes, had for four years held the office of city treasurer of Pacific Grove, and had been defeated for that office at an election held in June, 1912.

It is the general rule that the intent of a voter must be in the first instance ascertained from the ballot itself; and that

such intent cannot, by proof of extrinsic circumstances, be shown to be other than that plainly and unequivocally expressed upon the face of the ballot. (*Maddux* v. *Walthall,* 141 Cal. 412, [74 Pac. 1026].)

This general rule, however, is subject to the exception that where the intent of the voter is doubtful, the ballot must be construed as any other paper writing; and therefore evidence of facts and circumstances of public notoriety concerning the candidates and connected with the election may be resorted to for the purpose of ascertaining the intention of the voter. (*Rutledge* v. *Crawford,* 91 Cal. 526, [25 Am. St. Rep. 212, 13 L. R. A. 761, 27 Pac. 779]; Payne's Law of Elections, sec 550.) Section 1205 of the Political Code provides that an elector may vote "for a candidate or person whose name is not printed on the ballot by writing a name for such office in the blank column" left therefor. The plaintiff, A. M. Fitzsimmons, was the only person of that name who was an avowed, known, and active candidate for the office in controversy. There was no evidence to show that any person by the name of Fitzsimmons other than the plaintiff, or that any member of the plaintiff's family, was known or understood by the electors of the township to be a candidate for the office; and in the absence of competent evidence to the contrary the presumption must be that the electors intended to vote for the only Fitzsimmons who was either known to or heard of by them as a candidate for that office. It is a fair inference from all the facts and circumstances of the present case that the forty-nine voters who wrote in the name of Fitzsimmons in the blank space left in the ballot for voting for the office of justice of the peace, intended thereby to vote for the only Fitzsimmons who was announced and known as a candidate for the office. This inference is fortified, we think, by the fact that the only other persons bearing the name of Fitzsimmons and residing in the township in which the election was held, were the wife and two sons of the plaintiff, all of whom sought and endeavored to accomplish the election of the plaintiff. It is not improbable that the three voters who cast their votes for R. M. Fitzsimmons had in mind the plaintiff, because he was the only person by the name of Fitzsimmons residing in the township who was a candidate for that office. However that may be, having written upon their ballots the surname and initials

of a person who resided within the county and who was eligible to the office, the law conclusively presumes that those voters intended to do that which they actually did. But assuming, aside from the presumption of law, that these voters actually intended to vote for R. M. Fitzsimmons and not for the plaintiff, it does not necessarily follow that there exists such an uncertainty as to the intent of the forty-nine voters who merely wrote in the name of Fitzsimmons on their ballots, as would preclude such ballots from being counted for the plaintiff. Of course, if R. M. Fitzsimmons as well as the plaintiff, A. M. Fitzsimmons had been an avowed and announced candidate for the office, the uncertainty as to which Fitzsimmons the forty-nine ballots in controversy were intended for would have been so pronounced as to require a ruling refusing to count them at all. No such situation, however, confronts us in the present case.

The judgment appealed from is affirmed.

Richards, J., and Kerrigan, J., concurred.