[Civ. No. 2634. Third Appellate District.—December 12, 1923.]

## O. H. ROBINSON, Respondent, v. S. T. McABEE, Appellant.

[1] ELECTIONS—CONTEST—SUFFICIENCY OF AFFIDAVIT.—In an election contest where the affidavit and statement of the grounds of contest declare that contestant and contestee were opposing candidates for justice of the peace of a designated township and alleges that illegal votes were cast at said election in two named precincts and that the greater number of legal votes and ballots were cast at said election in said township for contestant, such affidavit sufficiently shows, as against a general demurrer, that said two precincts are embraced within said township.

[2] ID.—EVIDENCE—MINUTES OF SUPERVISORS.—In such contest, the minutes of the board of supervisors containing a statement of the votes received by all candidates in the county, including the votes cast for the office of justice of the peace in the township in question by precincts, naming them, is admissible in evidence, and its contents are *prima facie* correct as to the facts therein set forth, including the number and names of the several precincts of said township.

[3] ID.—ILLEGAL VOTER—SELF-INCRIMINATING TESTIMONY.—In such contest, the trial court did not err in requiring a witness, an alleged illegal voter, to give testimony disclosing the name of the person for whom she voted for the office of justice of the peace, where the evidence, independent of any testimony given by said witness, conclusively showed that she had not been a resident of the county the requisite number of days; but even though it was error to compel her to testify over her objection that her testimony would tend to incriminate her, such objection was not available to the contestee.

[4] ID.—CANDIDATE FOR WHOM VOTE CAST—CIRCUMSTANTIAL EVIDENCE FINDING—APPEAL.—In an election contest, circumstantial evidence may be resorted to, if necessary, to prove that a disqualified voter cast his ballot or voted for a particular candidate at a particular election, and if from such evidence a finding is deduced that the vote so cast was for a candidate whose election is challenged by reason of such illegal vote, and said vote is accordingly deducted from his total vote, no court of review will disturb such finding unless it clearly appears from the circumstances themselves as they stand in the printed record that they are inherently too weak or upon their face insufficient in probative force to justify the conclusion arrived at by the trial court.

APPEAL from a judgment of the Superior Court of Mendocino County. H. L. Preston, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. D. L. Held for Appellant.

M. H. Iversen for Respondent.

HART, J.—The contestant and the contestee were rival candidates for the office of justice of peace of Anderson township in Mendocino County, at the general election held throughout the state on November 7, 1922. On the face of the returns, as indicated by the canvass of the vote for said office by the board of supervisors of said county, McAbee, the contestee, received a total of 165 votes and his opponent, Robinson, received 164 votes. Said board officially declared that McAbee received the highest number of votes cast for said office at said election and directed a certificate of election to be issued to him, and the same was so issued.

On November 21, 1922, Robinson instituted a proceeding contesting the election of McAbee and in his petition or

verified statement of the grounds of contest alleged, among other matters, that certain illegal votes were cast at said election in Counts and Anderson precincts of Anderson township for said McAbee, and that "the greater number of legal votes and ballots were cast at said general election for the contestant herein than for the contestee, and that at said election contestant received a plurality of the total of votes cast for the candidates for said office." Upon the filing of said affidavit or petition, a citation, addressed to the contestee, was issued, and, together with a "notice of illegal votes" (sec. 1116, Code Civ. Proc.), was served on him on the twenty-first day of November, 1922. After a general demurrer to the contestant's affidavit or petition interposed by him was overruled by the court, the contestee filed an answer to the affidavit or statement of contest denying the allegations thereof.

At the trial of the contest the ballots cast at the election in the several precincts of Anderson township were recounted by the court. Upon said recount the court found that one ballot was cast in Counts precinct which bore no expression of choice for the office of justice of the peace of said township, but which was erroneously counted by the election officers for McAbee. The throwing out of this vote left the contestee and contestant with 164 votes each. The court further found that in Anderson precinct of said township one Leila Waggoner cast a vote for McAbee and which was counted for him, and that said Leila Waggoner was an illegal voter. This vote was deducted from McAbee's total, with the result, obviously, that his total vote was reduced to 163, the vote then standing: Robinson 164, and McAbee 163. Upon these findings the court rendered judgment declaring Robinson to have been elected, canceling the certificate issued to McAbee and directing a certificate of election to be issued to Robinson.

The contestee appeals from said judgment and supports the appeal by a bill of exceptions.

The correctness of the ruling rejecting the ballot which contained no stamp opposite the name of either of the candidates for justice of the peace of said township is not challenged. In fact, it is conceded by contestee that the court's ruling was proper with respect to said ballot. The contention is, however, that the judgment should be reversed

for several different reasons, to wit: (1) That there was no evidence showing that Anderson and Counts precincts are included within the boundaries of Anderson township; (2) that the court committed prejudicial error in requiring the witness Waggoner to state for whom she voted, she having, through her counsel, especially employed to represent her at said hearing, declined to testify on the ground that her testimony would tend to incriminate her, and the further ground that to compel her to state for whom she voted would require her, against her consent, to surrender her right to preserve the secrecy of her ballot; (3) that the testimony of said witness did not warrant the court in find ing that her ballot was cast for McAbee.

[1] 1. We think it sufficiently appears in the affidavit and statement of the grounds of contest that Anderson and Counts precinct are situated within Anderson township. It is not so specifically stated, but the affidavit does declare that the contestant and contestee were opposing candidates for justice of the peace of Anderson township and in connection therewith alleges that illegal votes were cast at said election in Anderson and Counts precincts and that the greater number of legal votes and ballots were cast at said election in said township for the contestant herein. The prayer of the complaint asks for a recount of the ballots cast in the two precincts named. As stated, the demurrer was general and the question whether the two precincts mentioned were embraced within Anderson township was not thus raised. In that particular we think the affidavit was sufficient to countervail the claims of a general demurrer. The answer does not deny that the two precincts named constitute a part of Anderson township. [2] At the trial the contestant introduced in evidence the minutes of the board of supervisors containing a statement of the votes received by all candidates at the general election held in the county of Mendocino on November 7, 1922, including the votes canvassed by the board of supervisors for the office of justice of the peace in Anderson township by precincts, and also the results of said canvass. The several precincts constituting Anderson township were therein named and opposite each was given the number of votes received therein by McAbee and Robinson, respectively. Among the precincts so named were Anderson and Counts precincts.

This record was admissible in evidence under the state of the pleadings, as indicated above, and its contents are *prima facie* correct as to the facts therein set forth, including the number and names of the several precincts of Anderson township. (*Calaveras County* v. *Brockway,* 30 Cal. 325, 326; *People* v. *Davidson,* 2 Cal. App. 100 [83 Pac. 161]; *Starkweather* v. *Dawson,* 14 Cal. App. 666 [112 Pac. 736]; *Merkley* v. *Trainor,* 142 Cal. 265 [75 Pac. 656].)

[3] 2. The court did not err in requiring the witness, Miss Waggoner, an alleged illegal voter, to give testimony disclosing the name of the person for whom she voted for the office of justice of the peace. It is first to be remarked that the evidence, independently of any testimony given by Miss Waggoner, conclusively shows that, prior to and at the time of the general election held in California in November, 1922, and at which election she is alleged to have voted, she had not been a resident of Mendocino County for a period of ninety days. Indeed, this proposition is not disputed by the contestee. The witness, therefore, was not legally a qualified voter at the time of the holding of said election, although it is conclusively shown and, in fact, not disputed, that she registered as a voter of Anderson township in the month of October, 1922. (Const., art. II, sec. 1.)

As to the complaint that the court erred in requiring Miss Waggoner to testify over her objection that her testimony would tend to incriminate her, it is first to be remarked that the right of a witness to decline to give testimony for the reason that it may tend to establish a crime against him is wholly personal to the witness. It is a personal privilege which the witness may himself either claim or waive. Miss Waggoner was not a party to the present contest, and the fact that her testimony might show or have a tendency to show that she committed a public offense can in no measure affect the rights of the contestee. Whether the court's action in compelling her to testify involved a violation of her right to refuse to testify on the ground stated is a matter which can in no manner concern the contestee or which could have operated prejudicially against his rights in the trial of the contest. Nor is it of any concern to the contestee whether the testimony so given may or might be used against the witness in a prosecution for illegally voting at said election. Indeed, the learned at-

torney for the contestee appears to have well recognized these propositions, since the objection to the witness' testimony on said ground was not interposed by him but by the witness herself, through an attorney, not connected with the trial of the contest, but who, as he himself stated, appeared before the court for no other purpose than to represent and protect the rights of the witness. It follows from the foregoing considerations that the objection to the witness giving her testimony upon the ground that it would tend to incriminate her cannot be availed of by the contestee.

The objection made by the contestee, through his attorney, that the court could not legally require the witness to state for whom she voted for the office of justice of the peace for the reason that such action by the court would involve a violation of the right of a voter to preserve the secrecy of his ballot, is untenable. It is well established in this country that the rule sought to be invoked by counsel for the contestee here is to be restricted in its application to those electors who have the legal qualifications which entitle them to vote. As applied to such voters the rule that the secrecy of the ballot shall be maintained is "justly regarded as an important and valuable safeguard for the protection of the voter, and particularly the humble citizen, against the influence which wealth and situation may be supposed to exercise. And it is for this reason that the privacy is held not to be limited to the moment of depositing the ballot, but is sacredly guarded by the law for all time unless the voter himself shall voluntarily divulge it." (McCrary on Elections, 4th ed., sec. 488.) The rule, however, is not applicable to persons who vote at a particular election but who are not qualified voters at the time of casting their votes. As is said by the author just named (sec. 492): "A person who votes without being qualified is a mere intruder and not entitled to the privileges which belong to legal voters." Or, as was well said by the late Chief Justice Beatty, in the case of *Patterson* v. *Hanley*, 136 Cal. 265, 276 [68 Pac. 821]:

"The policy of the law is, it is true, to preserve secrecy of the ballot, but this policy does not extend to illegal votes. If the elector disregards the terms upon which he is allowed to vote, and thereby secures the counting of an illegal

ballot, he forfeits the privilege of secrecy in favor of the superior right of a party injured by his act to have the truth disclosed.'' (See cases cited in the foot-notes of the case of *People* v. *Pease*, 84 Am. Dec. 242, 268 et seq.; see, also, 15 Cyc., p. 424; Ann. Cas. 1912A, p. 728; *People* v. *Turpin*, 49 Colo. 234 [Ann. Cas. 1912A, 724, 33 L. R. A. (N. S.) 766, 112 Pac. 539]; *Van Winkle* v. *Crabtree*, 34 Or. 462 [55 Pac. 831, 935]; *Skane* v. *Milward*, 138 Ky. 200, 127 S. W. 773, 778.)

Of course, such a person will not be compelled to testify as to the person for whom he voted until it is clearly shown he voted illegally. And so long as the question as to the legality of his vote is in doubt, he cannot be compelled to make the disclosure. In this case, however, Miss Waggoner was shown to be without the qualifications of a voter before she was asked to state for whom she voted.

The counsel for the contestee cites the cases of *Lauer* v. *Estes*, 120 Cal. 652 [53 Pac. 262], and *Smith* v. *Thomas,* 121 Cal. 533 [54 Pac. 71], as supporting the position that a voter cannot be compelled to disclose the names of the persons for whom he voted at an election. Those cases do not support that position. They merely hold, among other things, that the extrajudicial declarations of a voter disclosing for whom he voted at an election involve hearsay testimony and are, therefore, inadmissible. This rule is stated and approved by nearly all the authorities to which our attention has been called and is undoubtedly sound.

3. The evidence discloses that the county clerk of Mendicino County had, prior to the day of the election in question, delivered to the election officers of Anderson precinct, in Anderson judicial township, 250 ballots; that 101 of said ballots were returned unused to said county clerk; that six of said ballots had been spoiled and 143 had been voted; that, according to the poll list of said precinct, 143 persons had voted in said precinct at said election. The ballots, on the recount of the same under the order of and before the court, disclosed that in said precinct 76 ballots were cast or votes had been voted at said election for the contestee for justice of the peace of Anderson township, and 59 for the contestant. The first question asked Miss Waggoner by counsel for the contestant was whether, at the election in question, in Anderson precinct of Anderson township, she

cast her vote or stamped her ballot "for one of the candidates or a candidate for justice of the peace of Anderson township," to which question she unequivocally replied that she did. The following questions were then propounded to the witness by counsel for the contestee and the answers following returned: "Q. For whom did you cast your vote? A. Well, if I stamped it as I intended to I stamped it for Mr. McAbee. I don't know whether I got the stamp in the right square and I wondered afterwards whether I got it in the right one. Q. Will you say whether or not you stamped a cross after the name of S. T. McAbee? A. I don't know his initials. I said that is who I intended to stamp it after. Q. Mr. McAbee was a candidate for that office, wasn't he? A. That is who I intended to stamp it for." On cross-examination the witness testified: "Q. You say you intended to stamp your ballot for Mr. McAbee? A. When I went there I intended to stamp my ballot for him, but I couldn't swear I did. Q. But by your testimony you are not testifying that you did stamp your ballot for Mr. McAbee, is that right? A. Well, I suppose I did, but as I say, I was in a hurry and wondered afterwards if I did mark the cross in the right place. I was quite in a hurry to get back to my work. Q. And you don't know whether you stamped your ballot for Mr. McAbee or not? A. No, sir, I couldn't swear to it. Q. Do you remember when you voted if or whether or not you stamped it in the voting square? A. I suppose I did, but couldn't swear I did stamp it in the right place." The witness, proceeding on cross-examination, stated that she recalled that she intended to vote for a certain measure and for certain candidates for other offices, and that she was able to recall that she "put the stamps on the ballot but just where I couldn't say." On redirect she testified: "Q. You went to the polls for the express purpose of voting for Mr. McAbee for that office, didn't you? A. When I went to the polls I had in mind another measure I was more particularly interested in than any of the local officers. Q. Did you see the name of Mr. McAbee on the ballot? A. I suppose so. I read the ballot over. Q. You read his name there and remember of seeing his name there? A. Well, I read the names over. Q. Will you state now whether or not you stamped your ballot on the squares after the names in voting? A. No, I

couldn't swear that I did.  Q. You understood that it was necessary at the time you voted that you should stamp your ballot in the squares, didn't you?  A. Yes, I made an attempt to do that.  Q. And you stamped your ballot in the square after the name of Mr. McAbee, or that was your intention?  A. That was my intention, but I couldn't say that I got it in the right place.''  On further recross, and further redirect, the witness stated that she had no personal acquaintance with McAbee prior to the day of the election; that he never solicited her vote; that she had never spoken to him until some day subsequent to the day of the election, but that, prior to the election, she was familiar with his name and became so through having one of his children in her classes; that she learned, on the night preceding the day of the election, that he was a candidate for justice of the peace, and that at that time she made up her mind to vote for him for said office.

The foregoing is all the testimony given by Miss Waggoner, except her statement that, after preparing her ballot, she delivered it to one of the election officers.

We cannot justly say that the trial court misinterpreted the testimony of Miss Waggoner or the effect thereof, or was not justified in concluding therefrom that she cast her ballot for the contestee for the office of justice of the peace. It will be noted that the witness, in reply to the first question put to her by counsel for the contestant, positively stated that she did cast her vote for one of the candidates for justice of the peace at said election.  It is true that she subsequently stated that she would not "swear" that she marked her ballot "in the right place" for said office, but it is also true that she stated that she looked over the ballot before preparing it for the ballot-box and saw thereon the names of those persons who were candidates for the several offices to be filled at said election.  She did not at any time deny that she voted for McAbee, but declared that she went to the polls and into the voting booth with the intention of doing so and that she *supposed* that she did mark her ballot for the contestee.  The only matter as to which she appeared to be uncertain was whether she stamped her ballot for justice of the peace in the square opposite the name of the contestee and she was no less uncertain in that particular as to candidates on the ballot for other offices

and certain measures which were to be voted upon that she intended to vote for. The ballots were inspected by the court·and it may be assumed, since the record here is silent as to that consideration, that the ballots, save and except the one which, as seen, bore no expression of choice for justice of the peace, were properly stamped. If they had not been, undoubtedly that fact would have been made to appear in the record. The witness did not claim that she might have mistakenly or ¿inadvertently voted for any other candidate for justice of the peace than the contestee. Indeed, she declared, as seen, that she went to the polls and into. the voting booth intending to vote for McAbee, that she "looked over the ballot" before starting to mark it and that she supposed she voted for the contestee. Her statement that she "supposed" that she so voted is tantamount to saying that she "thought" or "believed" she voted for McAbee. At all events, it was for the trial court to determine from all the circumstances and the manner in which the witness gave her testimony whether she did or did not vote for McAbee. Further discussion of the evidence is not necessary. As stated above, the case, so far as the evidence is concerned, is one in which the conclusion of the trial court cannot justly be interfered with. **[4]** It will not be disputed that, no less than as to any other issue of fact, circumstantial evidence may be resorted to, if necessary, to prove that a disqualified voter has cast his ballot or voted for a particular candidate at a particular election (see McCrary on Elections, 4th ed., sec. 493; *People* v. *Pease*, 27 N. Y. 45 [84 Am. Dec. 242]), and it is certainly true that if from such evidence a finding has been educed that the vote so cast was for a candidate whose election is challenged by reason of such illegal vote, and that said vote is accordingly deducted from his total vote, no court of review will disturb such finding unless it clearly appears from the circumstances themselves as they stand in the printed record that they are inherently too weak or upon their face insufficient in probative force to justify the conclusion arrived at by the trial court.

We think the result reached herein by the court below should be approved. Accordingly, the judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.