[Civ. No. 7709.   Third Dist.   July 3, 1950.]

CHARLES W. HAWKINS, Appellant, v. T. J. SANGUINETTI, Respondent.

Blewett, Blewett & Macey for Appellant.

Wyatt, Green & Carr for Respondent.

PEEK, J.—The present controversy arises out of an election contest between appellant and respondent who were opposing candidates for the office of supervisor for the Third Supervisorial District of San Joaquin County in the November 1948 general election. The official canvass of the returns showed that the contestant Hawkins received a total of 7,256 votes and that the contestee Sanguinetti received 7,269 votes, whereupon Sanguinetti was declared duly elected to said office. On January 10, 1949, Hawkins filed in the superior court of said county a statement of contest wherein it was alleged that (1) certain illegal ballots were cast for Sanguinetti in 17 of the district's 75 precincts; (2) that in said 17 precincts illegal ballots were counted for Sanguinetti; (3) that certain legal ballots were not counted in said 17 precincts, and (4) that such irregularities procured the election for Sanguinetti. After a hearing on the contest the trial court found the final vote to be 7,264 for Sanguinetti and 7,263 for Hawkins, and confirmed the election of the former as supervisor of said district.

Appellant Hawkins, in his appeal from the judgment which was accordingly entered, has attacked the same on several

grounds, none of which, however, appear to warrant this court in disturbing the conclusion of the trial court.

■ He first argues that as the ballot labeled ''Contestant's Exhibit Q'' bore a distinguishing mark, it was invalid under the provisions of sections 5714 and 7054 of the Elections Code, and was improperly counted as a vote for Sanguinetti. The ballot in question had the words ''Willie A. Melton'' written thereon in pencil immediately to the right of the box-like perforation in the upper left hand corner thereof which contains the ballot number, and approximately on the horizontal perforation above which is printed the instructions to voters in voting the ballot.

Although section 5714 of said code provides that ''A voter shall not place any mark upon his ballot by which it may be afterwards identified as the one voted by him,'' nevertheless no unauthorized mark appearing upon the ballot will invalidate the same ''unless it appears that the mark was placed there by the voter for the purpose of identifying the ballot.'' (Section 7054.) Accordingly in the recent case of *Garrison* v. *Rourke*, 32 Cal.2d 430, 439 [196 P.2d 884], wherein a like question was raised, the Supreme Court held that ''Pursuant to the present law, if the mark itself does not warrant an inference that it was designedly placed by the voter for the purpose of identifying his ballot, and in the absence of other evidence of intent in that regard, the ballot may not be rejected on the ground that it bears a distinguishing mark.''

Thus it is apparent that unless the name of Willie A. Melton was placed on said ballot ''by the voter for the purpose of identifying his ballot,'' the ballot was properly counted by the trial court.

The record in regard to this particular ballot only shows that the voter's register, which was introduced in evidence, bears the name of Willie A. Melton as a voter in Mosswood Precinct, and that such a name appears on the roster of voters as one who voted at said election. The voter himself was not called as a witness and no other evidence was before the court.

Upon the evidence so produced the trial court was required to draw one of two conflicting inferences—either that a voter intended to identify his ballot or that he did not so intend. In reaching his conclusion that the voter did not so intend the court observed that he believed it to be ''a fair inference that the voter, Willie A. Melton, did not intend to make a distinguishing mark, that it would appear that he relied upon the perforated line and that his name would be torn off of

the ballot before it was put in the box." Thus it appears that since the trial court determined the act of writing the name did not of itself warrant an inference that it was designedly written on said ballot for the purpose of identifying the same, and since there is no evidence of intent, other than that which we have previously mentioned, the trial court was justified in concluding as it did—counting the same as a vote for contestee. (*Garrison* v. *Rourke, supra,* p. 439.)

Appellant next contends that certain ballots labeled "Contestant's Exhibits L, S, Y-1 and A-2" are illegal in that the mark opposite the name of Sanguinetti is not a visible cross but consists of some form of a circle, blotch or other individual mark, and therefore under the provisions of sections 3828, 5710, 7050 and 7052 of the Elections Code said ballots were improperly counted for Sanguinetti.

Exhibit L shows that a stamp was used throughout the ballot although it appears to have been applied with a twisting motion in the square following contestee's name.

Exhibit S also shows that a stamp was used by the voter but that it blurred when used in voting for contestee.

Exhibit Y-1 also discloses an imperfect cross following contestee's name but that a stamp was used throughout.

Exhibit A-2 in all respects appears to be quite similar to Exhibit Y-1.

We find nothing in the code sections relied upon by contestant to indicate that the trial court was in error in concluding that the challenged votes were illegally cast for respondent. Nor do we find anything to the contrary in the cases cited and relied upon by appellant—*Morrison* v. *White,* 10 Cal.App.2d 266 [52 P.2d 263] and *Lester* v. *Fairbairn,* 32 Cal.App.2d 411 [89 P.2d 1091]. In the first case the registered ballots bore "a distinct and individual mark, not stamped but drawn." In the second case the crosses on the ballot were likewise "distinct and individual" and clearly appeared to have been "drawn."

Again referring to the Garrison case, *supra,* it appears that a like question was raised therein and the court in affirming the action of the trial court stated that the particular ballot there in question, like the exhibits last mentioned "clearly shows the use of a stamp with a cross impression," and since there was no "evidence to show either on or dehors the face of Ballot 46 that it was not the stamp provided for the purpose" the conclusion of the trial court was proper.

Appellant next contends that "Contestant's Exhibit P"

was improperly counted for contestee for the same reasons that appear in his argument concerning his last contention. In this regard the contestant states that it is because of the inconsistency in the court's ruling in rejecting certain other ballots, Contestant's Exhibits O-1, G-2 and L-1 and Contestant's Exhibits 11-13-20 and 31, that he makes this contention. The ballots so rejected are not before us. The only information we have in regard thereto is the comment appearing in respondent's brief that on each ballot the cross was drawn and not stamped. Each of the crosses made on the ballot here in question — Contestant's Exhibit P — were imperfect. However, that is not to say that the mark was not made with the stamp provided for that purpose or that it was impossible to determine the voter's choice. (Elec. Code, § 7052.) Hence, for the reasons hereinbefore mentioned in relation to contestant's previous contention, this ballot likewise was properly counted for the contestee.

It is next contended by contestant that his Exhibit C-1 was illegally marked in that the voter's choice could not be determined therefrom. On this particular ballot it appears that none of the crosses were perfectly centered in the space provided for that purpose, and as to the office in question the trial court found that more than two-thirds of the cross appears in the square following the contestee's name and in the remaining portion appears above the line running between said square and the square following contestant's name. ''Whether there was a sufficient portion of the cross in the square opposite defendant's name to count as a vote for him was a question primarily for the trial court.'' (*Garrison* v. *Rourke, supra,* p. 439.) The rule as enunciated by the court in the Garrison case, *supra,* is in accordance with section 7050 of the Elections Code, that a cross partly within and partly without a square does not invalidate it, and subsection c of section 7052 of the same code, that the vote shall be counted unless for some reason it is impossible to determine the voter's choice. Since the court determined that the major portion of the cross was in the square following the contestee's name the voter intended to so vote, and in the absence of anything to the contrary, we conclude that the holding of the trial court in this regard was proper.

A further contention is made by appellant that the ballot cast by one John Hyde was illegal and should have been deducted from Sanguinetti's total. Both parties are in accord as to the illegality of Hyde's vote. His testimony, when

called as a witness for contestant, shows without contradiction that he was voting outside of his proper precinct (Elec. Code, § 122), that he received assistance in voting from a stranger who occupied the voting booth with him in violation of section 5707-08 of said code, and that admittedly he did not comply with the provisions of sections 5721-5724 of the same code relative to the method of receiving assistance in voting.

Contestant, in support of his contention that the court erred in not deducting Hyde's vote from the contestee's total, refers to Hyde's statement that after requesting assistance from a postman in the adjoining booth, he instructed his assistant to cast a vote for Sanguinetti. Appellant then argues that since no evidence was presented by contestee to rebut such testimony it must be presumed that said assistant carried out Hyde's instructions and cast a vote for Sanguinetti, and therefore not alone should the ballot have been declared illegal but also the trial court should have deducted a vote from the contestee. We are not so convinced of the conclusiveness of such testimony as contestant appears to be. It should be noted that upon direct examination the witness also testified that he had poor vision, that he did not have his glasses at the time and that the light was not too good in the voting booth, while on cross-examination he testified that he neither saw, nor did he know of his own knowledge, where the stamp was placed on the ballot nor did he read any of the names appearing on the ballot. Additionally it should be noted that the person who assisted Hyde was not produced as a witness. Under such circumstances it cannot be said that the evidence was so clear and convincing as to warrant this court in disturbing the conclusion reached by the trial court on a question of fact.

▪▪▪ Appellant's final contention relates to the testimony of four witnesses called by him, and in particular to the refusal of the trial court to admit into evidence affidavits signed by said witnesses approximately one month after the election.

The record shows that each of the witnesses testified that he or she cast a ballot at said election although no longer a resident of the precinct in which the vote was cast and therefore were illegal voters in said precinct. Three of the witnesses could not remember for whom they voted in the supervisorial contest and the fourth testified that he did not cast a vote for that office.

Preliminary to appellant's motion to introduce the affidavit

of the first witness into evidence she was asked, ''did you have a better recollection for whom you voted for that office on December 9th than you now have?'' To which the witness replied, ''No, I don't.'' The second witness made a similar reply to a like question by contestant's counsel. The third witness testified that he could not say whether his recollection was better at the time the affidavit was signed or at the time of trial. Also when asked if the affidavit refreshed his memory as to whether or not he cast a vote for supervisor he replied, ''I just can't recall whether I did or not.'' The fourth witness, when asked, ''Did you vote for a candidate for the office of supervisor?'' replied, ''I did not.''

At the conclusion of the testimony of each witness and after he had been given an opportunity to examine the affidavit signed by him, counsel attempted to introduce the same into evidence upon two grounds: (1) that they were a form of past recollection record and as such were admissible as affirmative evidence, and (2) that they were a form of circumstantial evidence admissible to show for whom each voter had cast his ballot.

Subject to the provisions of section 2047 of the Code of Civil Procedure it is proper to allow a witness to refresh his memory by exhibiting to him any writing coming within the provisions of said section. However, in no sense were the affidavits here in question testimony, such as, appellant contends, would warrant their introduction into evidence. (*Estate of Packer,* 164 Cal. 525, 530 [129 P. 778].) It should further be noted, as is also provided in said section, that it is only the adverse party, if he should so choose, who may treat the writing as evidence. The reason for the rule is succinctly stated in the Packer case, *supra,* at page 530, where the court observed that ''to permit this to be done by the party producing the witness would open the door to the admission of hearsay and manufactured evidence without limit.''

We find nothing in the cases of other jurisdictions relied upon by appellant in support of the second portion of his final contention. While it is true that circumstantial evidence may be resorted to in an election contest as well as in any other proceeding the case of *Robinson* v. *McAbee,* 64 Cal. App. 709 [222 P. 871] is not, as appellant contends, authority for the use of writings in a matter such as is proposed by appellant herein.

In *Lauer* v. *Estes,* 120 Cal. 652 [53 P. 262], the trial court, over objection, allowed the introduction into evidence of a

declaration of a witness [an illegal voter] as to how he had cast his vote. In reversing the judgment the Supreme Court held that a declaration of a disqualified voter, as to how he voted, made sometime after the election, in the form of an affidavit before a notary public, ''is clearly incompetent, and hearsay of the most dangerous kind,'' and ''in no sense part of the res gestae—even if such a declaration might be admitted at all as part of the res gestae.''

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 31, 1950.