[Civ. No. 21889. Fourth Dist., Div. Two. Mar. 12, 1981.]

LUTHER T. FAIR, Plaintiff and Appellant, v.
RALPH HERNANDEZ, Defendant and Respondent.

COUNSEL

Allard, Shelton & O'Connor, Gary C. Wunderlin and Keith A. Johnson for Plaintiff and Appellant.

Garza, Kassel & Jordan, Florentino Garza, Edward F. Taylor, Horvitz & Greines, Ellis J. Horvitz and Alan G. Martin for Defendant and Respondent.

## Opinion

**GOLDSTEIN, J.**[*]—This controversy arises out of a contested election for Councilman of the Third Ward of the Common Council of the City of San Bernardino. Appellant Fair was one of the two candidates whose name was printed on the ballot in the May 1, 1979, runoff. Respondent Hernandez was a legally qualified write-in candidate for the same seat. Following the election the City Council of San Bernardino declared Hernandez the winner over Fair by four votes. Fair requested and obtained a recount, the result of which was to reduce the margin by one, 793 votes for Hernandez, 790 votes for Fair. Fair filed an election contest. By stipulation the Registrar of Voters of San Bernardino County was appointed a special master to assist the court in a recount of the votes. The special master determined that Hernandez received 756 uncontested votes, Fair received 773 uncontested votes and that 76 votes were contested. Extensive evidence was entertained by the trial court on all contested ballots. The court determined that Hernandez received 796 votes and Fair 794 votes. It made findings of fact and conclusions of law and caused judgment to be entered confirming Hernandez's election. Fair appeals from that judgment, questioning in his appeal 36 ballots which, if ruled upon in his favor, could affect the outcome of the election.

■ The scope of review in an election contest is not different from other cases. Where the evidence is in conflict, this court will defer to the trial court where events at trial and demeanor of the witnesses play an important part in the decision. However, the interpretation of ballots is governed by the same rules applied to the construction of all other written instruments unless the interpretation turns on the credibility of extrinsic evidence. Accordingly, this court is not bound by an interpretation given a ballot based solely on the ballot without the aid of evidence, where there is no conflict in the evidence, or an interpretation has been made upon incompetent evidence. (*Keane* v. *Smith* (1971) 4 Cal.3d 932, 939 [95 Cal.Rptr. 197, 485 P.2d 261].)

[*]Assigned by the Chairperson of the Judicial Council.

■ Fair first objects to a group of four ballots, exhibits 67A through 67H. It is not clear from the record whether or not evidence was received touching these four ballots. In any case, there can be no conflict regarding their condition. The ballot used in the contested election consisted of a numbered punchcard which provided 235 voting positions plus a separate folded envelope, used to conceal the punchcard when inserted, on the inside of which was printed the write-in ballot. Although characterized by the trial court as "particularly complicated . . . for such a simple election" the write-in ballot used conformed with the requirements of California Elections Code section 10331.[1] In addition to the legend, "After voting insert ballot card with stub exposed into envelope pocket *and close flap*," on each a picture of the envelope *with the flap open* was graphically depicted. (Italics added.) With the flap open the write-in ballot, with instructions in English and Spanish, was unavoidable. No space for write-in candidates was provided on any of the numbered punchcard ballots. On three of the punchcard ballots the name "Ralph Hernandez" was written some place on the front. The same name was written on the back of the fourth punchcard ballot. None of the four write-in ballots had any candidate's name written on them.

■ In each of these four instances the will of the voters was evident and the trial court so found. (Findings 36-39.) But it is not enough to find out generally the voter's will, such will must be expressed in the manner prescribed by law. (*McFarland* v. *Spengler* (1926) 199 Cal. 147, 152 [248 P. 521].) Section 14238 states, in part: "A vote for a candidate or person whose name is not printed on the ballot may be cast by writing in a name for that office in the blank space left for that purpose." Hernandez successfully urged on the trial court that the use of the permissive "may" does not preclude counting the votes cast for him on these four ballots.

■ "[T]he right to express one's choice of a candidate at the polls is not unrestricted. It is subject to reasonable regulation in the interest of secrecy and uniformity of the ballot and the fairness of the vote, etc. [Citation omitted.]" (*McFarland* v. *Spengler, supra*, 199 Cal. 147, 152.) The Legislature has the power to establish reasonable regulations governing write-in procedures. (*Binns* v. *Hite* (1964) 61 Cal.2d 107, 111 [37 Cal.Rptr. 323, 389 P.2d 947].) ■ The courts have the

---

[1]All references are to the California Elections Code unless otherwise indicated.

duty to enforce the statutory scheme for the conduct of elections according to their terms and evident intention. (*Patterson* v. *Hanley* (1902) 136 Cal. 265, 270 [68 P. 821, 975].) "[T]he legislative intent underlying a statute must be ascertained from its language; if the language is clear there can be no room for interpretation, and effect must be given to the plain meaning of the language. [Citations· omitted.]" (*Livingston* v. *Heydon* (1972) 27 Cal.App.3d 672, 677 [104 Cal.Rptr. 83].)

▇ Recitation of the pertinent code sections compels the conclusion that the trial court erred in counting the four votes in exhibits 67A through 67H for candidate Hernandez. Whenever ballots are to be counted by use of machines or tabulating devices, as all but the write-in votes were in this case, ". . . write-in votes for candidates, to be counted, shall be marked. . . in the space provided opposite the names of the write-in candidates." (§ 10325.) The punchcard used in this contested election was permissible and constituted part of "the ballot" contemplated in section 10330. (§§ 10331, 10332.) The ballot is required to "contain· proper blank spaces to allow the voter to write in names not printed on the ballot unless a separate write-in ballot is used. The separate write-in ballot may be. . . the envelope used to enclose a ballot card. . . . The separate write-in ballot shall provide a blank space. . . for purposes of facilitating write-in votes for offices for which write-in votes may be cast . . . ." (§ 10331.) "Space shall be provided on the ballot or on a separate write-in ballot to permit voters to write in names not printed on the ballot . . . ." (§ 10335.) "A vote for a candidate or person whose name is not printed on the ballot, may be cast by writing in a name for that office in the blank space left for that purpose." (§ 14238.) Finally, whether the vote count is in the precinct or is canvassed, "[a]ny ballot which is not marked as provided by law. . . shall be rejected" but "[a]ny name written upon a ballot. . . shall be counted . . . if it is written in the blank space therefor . . . ." (§§ 17007, 17100.) See also section 15242, which states, in part, "[i]f a separate write-in ballot is used, the board shall number each write-in ballot which contains a write-in vote. . . and the same number shall be placed on the ballot card . . . . Before any such vote is counted the board shall. . . ascertain whether the write-in vote is valid, and count it only if it is found to be valid."

▇ "'Shall' is mandatory and 'may' is permissive" unless the provision or the context otherwise requires. (§§ 11, 4; *Garrison* v. *Rourke*

(1948) 32 Cal.2d 430, 437 [196 P.2d 884].) If, as the court below was convinced, the direction contained in section 14238 is merely permissive the Legislature's general scheme regarding write-in votes evident in the Elections Code would be abrogated. In this election only the write-in ballot referred to was provided. If the elector was not bound by the provisions of section 14238, write-in votes might be cast in as many different ways as there were write-in voters. Such unfettered variety would undermine the secrecy, uniformity and fairness of the vote (*McFarland* v. *Spengler, supra,* 199 Cal. 147, 152) to say nothing of the integrity of the voting process itself.

■ These four write-in ballots were totally blank; no name had been written in any of the blank spaces provided. Candidate Hernandez's name was written on the punchcards which were intended to be counted by electric or mechanical means. No slot was punched opposite the name of the write-in candidate on the punchcard and, in fact, none could be because the punchcards were not the write-in ballot and there was no space provided for a write-in candidate and no numbered slot was assigned to write-in candidates. The deviation from the statutory scheme is here so considerable that the ballots cannot be saved. These four votes should have been rejected and they must be deducted from those counted for Hernandez, reducing his total to 792.

■ Exhibits 75A through F are three ballots on which Hernandez's name was written on the ballot punchcard in addition to being correctly filled in on the write-in ballot. Fair claims the writings on the punchcards are impermissible identifying marks which invalidate the ballots. The line of cases which put aside some marks as not showing the necessary intent to identify turned on then extant section 7054, or its predecessor, which provided that no unauthorized mark shall invalidate the ballot unless "'it shall appear that such mark was placed thereon by the voter for the purpose of identifying such ballot.'" (*Turner* v. *Wilson* (1915) 171 Cal. 600, 603 [154 P. 2]; *Sweetser* v. *Pacheco* (1916) 172 Cal. 137, 139 [155 P. 639]; *Garrison* v. *Rourke, supra,* 32 Cal.2d 430, 439; *Hawkins* v. *Sanguinetti* (1950) 98 Cal.App.2d 278, 280 [220 P.2d 58].)

The just quoted portion of the statute survived the 1961 reenactment in section 17074 (Stats. 1961, ch. 23, p. 808); however, those words are omitted in the 1975 amendments. The Legislature now mandates, "[n]o voter shall place any mark upon a ballot that will make that ballot iden-

tifiable." (§ 14241.) Because the act of voting itself makes the ballot identifiable the intent of the Legislature must have been that votes cast for the same candidate be done in so similar a manner that the ballots properly cast will be indistinguishable one from the other and therefore not be identifiable as having been cast by a particular voter. Furthermore, "[a]ny ballot which . . . is marked . . . by the voter so that it can be identified by others" is not to be counted. (§ 17007.) Although the critical words in section 17007 are different from those in section 17074 and its predecessors, their import is the same and the reasoning in the *Turner* case, requiring intent to identify, remains valid. We find on none of these three ballots anything warranting the inference that the writing of the write-in candidate's name on the punchcard was done by the voter for the purpose of identifying the ballot. (*Turner* v. *Wilson, supra*, 171 Cal. 600, 604.) The trial court so found and properly counted these three votes for Hernandez.

■ Exhibit 78, an absentee vote cast for Hernandez, is different. Angela Alvarado inadvertently wrote her own name in the space for write-in candidates on her absentee ballot. She contacted the registrar's office by telephone for advice. She was told to scratch out her name, initial the scratch marks and then to vote for the candidate of her choice, which she did. As a result, arguably, the ballot was twice made identifiable. First, when the voter inadvertently wrote her name in the write-in space which we do not have to decide, and second, when, on the advice of the registrar's office, she placed her initials at the scratch marks. The latter was clearly intended to identify who had scratched out what had previously been written. The second marking, at least, is irreconcilably at odds with both sections 14241 and 17007. Neither the registrar nor the court has authority to change the law. It is most unfortunate that the voter is deprived of her franchise through the fault of an official but no exception exists to cover the circumstance. (*Patterson* v. *Hanley, supra*, 136 Cal. 265, 276.) This vote must be deducted from Hernandez's total, reducing it to 791.

In each of the remaining instances the trial court ruled correctly. We deal with them in the order raised.

■ After considerable evidence, the court determined that: (1) The absentee vote of Augustine Mayoral (exhibit 7) was cast with the assistance of the voter's wife in the privacy of their common home, and only in the presence of each other, when the voter was partially physically disabled.

And (2) that the absentee vote of Molly Lizarde (exhibit 86) was filled out by Irene Lizarde at the specific request and authorization of the voter, in the privacy of their common home, and only in the presence of each other when the voter was partially physically disabled.

Implicitly, the court found that sections 14234, 14235 and 14236 do not apply to absentee votes not cast at the polling place. We agree. Furthermore, where the evidence is in conflict this court will not disturb the findings of the trial court where, as here, they are supported by substantial evidence. (*Keane* v. *Smith, supra*, 4 Cal.3d 932, 939.)

The actual ballot had already been separated from the Estrada absentee ballot material (exhibit 6) when the vote was challenged. The court found that the voter had not signed the application for absent voter's ballot or the identification and return envelope but properly refused to deduct the vote from Hernandez. Even in the face of an established illegality when the manner in which the vote was cast is not certain, as here, the court is justified in refusing to deduct it. (*Hawkins* v. *Sanguinetti, supra*, 98 Cal.App.2d 278, 282.)

Twenty write-in ballots (exhibits 77A through 77M) had "Hernandez" or some embellishment thereof which included the name "Hernandez" written in a proper place on the write-in ballot and were counted by the trial court. Fair's argument that the use of the surname only invalidates the ballot is without merit. The intent of the voter must first be ascertained from the ballot and where that intention is clearly expressed and the name is that of a qualified write-in candidate, inaccuracies or use of an incomplete name are of no consequence. (*Fitzsimmons* v. *Wilks* (1914) 25 Cal.App. 56, 58 [142 P. 892]; *Muir* v. *Steinberg* (1961) 197 Cal.App.2d 264, 271 [17 Cal.Rptr. 431].)

Fair complains that he was erroneously deprived of the five votes represented by exhibits 65A, 65B, 65D, 66A, and 66B. Fair's number designation on the punchcard was 4. The first three of these exhibits have the number 24 punched. Numbers 23 and 24 are immediately to the right of number 4 on the punchcard. The last two exhibits have the number 1 punched. Neither the argument that Fair's name appeared first on the ballot and punching number 1 shows an intention to vote for him, nor the argument that number 24, being to the right

and slightly lower, shows an intention to punch number 4 for Fair, is persuasive. Ballots are not to be counted as to offices as to which they are equivocal. (*Patterson v. Hanley, supra*, 136 Cal. 265, 272.) When the voter is required to punch out the number that corresponds to his chosen candidate and he fails to do so, or punches another number, which in the particular election is not assigned to either a candidate or an issue, he has failed to mark his ballot as required by law and the vote cannot be counted for his chosen candidate. (*Muir v. Steinberg, supra*, 197 Cal.App. 264, 270.)

 Finally, Fair is correct that this court will not entertain on appeal what has not been previously raised at the trial court. (*Langley v. Head* (1904) 142 Cal. 368, 371 [75 P. 1088].) Hernandez argues that exhibit 64A, on which numbers 4 and 24 were punched, should be deducted from Fair's total. The trial court quite properly counted it. A vote in a blank space does not invalidate the ballot which will be counted in other particulars. (*Patterson v. Hanley, supra*, 136 Cal. 265, 272; *Sweetser v. Pacheco, supra*, 172 Cal. 137, 139.) The punching of an unassigned number on a punchcard ballot is not a disqualifying identifiable mark in the absence of a showing of intent to make the ballot identifiable. (*Turner v. Wilson, supra*, 171 Cal. 600, 604.)

In controlling the order of proof, the trial court did not require Hernandez to go forward until Fair had concluded his presentation and then only if, at the conclusion, Fair had more legal votes than Hernandez. That circumstance did not arise in the trial court. As a result Hernandez has not affirmatively pursued defenses and contentions raised below, and he should have the opportunity to do so.

The judgment is reversed and the matter is remanded for further proceedings not inconsistent herewith.

Kaufman, Acting P. J., and McDaniel, J., concurred.

KAUFMAN, Acting P. J.—I fully agree with the main opinion, but I think it appropriate to emphasize a point implicit in the opinion that might otherwise be passed over.

It is unfortunate that we are required to reach a result that has the effect of prolonging the uncertainty as to which candidate received a majority of the valid votes. However, preservation of the integrity of the election process is far more important in the long run than the resolution of any one particular election.

A petition for a rehearing was denied April 2, 1981, and respondent's petition for a hearing by the Supreme Court was denied May 20, 1981. Bird, C. J., was of the opinion that the petition should be granted.