[Sac. No. 362.  In Bank.—July 27, 1898.]

## M. W. SMITH, Appellant, v. J. W. THOMAS, Respondent.

ELECTION CONTEST—MARKED BALLOT.—Upon the trial of an election contest a ballot so marked by the voter when it is voted, that it can be identified, should be rejected.

ID.—TIME OF MARK—CONFLICTING EVIDENCE—REVIEW UPON APPEAL.— Where there is a substantial conflict of evidence as to whether a peculiar mark upon a ballot was placed thereupon by the voter, or was made after it was taken from the ballot box, a finding of the court that the mark was not upon the ticket when taken from the box, and that it was made subsequently, and its action in accepting and counting the ballot, will not be disturbed upon appeal, though the evidence apparently preponderates the other way.

ID.—EVIDENCE—LIST OF ILLEGAL VOTES.—The plaintiff, in an election contest cannot introduce evidence of an illegal vote not specified in the list of illegal votes served by him upon the defendant, as required by section 1116 of the Code of Civil Procedure; and the fact that the voter's name was upon a list of illegal votes served upon the plaintiff by the defendant cannot justify evidence of such illegal vote on the part of the plaintiff.

ID.—TESTIMONY OF ILLEGAL VOTER—IMPEACHMENT—CREDIBILITY.—An illegal voter who testified for plaintiff that he voted for the defendant, may be impeached by proof of declarations made by him to other witnesses that he did not vote for any one for the office in controversy, and that for certain reasons he would not vote for the defendant. The credibility of the witness thus impeached is to be determined by the trial court; and it may refuse to deduct the vote from the tally of the defendant.

ID.—CLEAR PROOF REQUIRED AS TO PERSON VOTED FOR.—The evidence must be very clear as to how an illegal voter voted, before his vote can be deducted from the total of any candidate. Where a voter declined to answer for whom he voted, his mere statement that if he had voted he supposed he would have voted for the defendant, and that he did not know but he would have voted for the office in controversy, if he had voted at all, does not amount to evidence as to the person voted for, notwithstanding other evidence tending to show that he had voted, and that he was not a legal voter.

ID.—RESIDENCE OF VOTER.—A finding in favor of the residence of a voter at the place of voting, will not be disturbed, where he testified that he was often absent therefrom, performing different jobs of work, but that he always left with the intention of returning when his work was done.

APPEAL from a judgment of the Superior Court of Tulare County.  Wheaton A. Gray, Judge.

The facts are stated in the opinion of the court.

Power & Alford, and Hannah & Miller, for Appellant.

C. G. Lamberson, and W. B. Wallace, for Respondent.

TEMPLE, J.—This is an election contest involving the right to the office of supervisor in district No. 3, county of Tulare. Defendant was declared elected by the board of canvassers. At the trial the court found that each received the same number of legal votes, and, as a conclusion of law, that plaintiff take nothing by the action.

1. The first point made upon the appeal is, that a certain ballot which had been counted for the defendant is illegal because it was marked so that it could be identified. There clearly was such a mark upon the ballot, and if it was upon the ballot when voted it should be rejected. The court found that the mark was not upon the ticket when taken from the box, but was made subsequently. There was some evidence to sustain this finding, although apparently the preponderance was the other way. After the preliminary showing as to the custody of the ballots since the election, there was also a strong presumption that the ballots were in the same condition in which they were first taken from the box—that is, that the marks were made by the voter. Still, we cannot say that there was not a substantial conflict in the evidence. Two witnesses testified that they scrutinized the ballots closely as they were first counted and would have seen the mark had it been there. They saw no such mark.

2. The plaintiff offered to prove an illegal vote which was not specified in the list of illegal votes served by him on the defendant, as required by section 1116 of the Code of Civil Procedure. The evidence was, upon objection, excluded.

Athough not on plaintiff's list, the voter's name was on a list served on the plaintiff by the defendant, and appellant now contends that defendant must therefore have known of the illegality of the vote and the purpose of the statute requiring a notice has been accomplished. But the purpose of the statute had not been accomplished. It was intended that the opposite party should know what votes the contestant would attempt to show were illegal, in order that he might come prepared with evidence upon that subject. If he had learned that the voter

named had voted for him or was a legal voter, and for either reason did not prepare proof upon the subject, such evidence would be as unfair as though the voter had never been named. He was not apprised that the contestant would rely upon the illegality of that vote.

3. One Stingley was called for plaintiff and testified that he voted for the defendant. Although the court held that Stingley was not a legal voter, it refused to deduct the vote from the tally of defendant. The reason given was that Stingley, as a witness, was so thoroughly impeached that he could not be believed, and the court could not determine for whom he voted. The testimony consisted of proof by several witnesses that Stingley had stated to them that he did not vote for anyone for supervisor, and for certain reasons would not vote for the defendant. As independent evidence these statements were clearly incompetent, as was held in the recent case of *Lauer v. Estes*, 120 Cal. 652. But it was here used for the purpose of impeachment, and may well have had the effect given it by the court. There was no evidence other than that of the impeached witness as to how he had voted.

4. One Crabtree, called as a witness, was asked for whom he had voted for supervisor. He declined to answer and was then asked: "Without intimating whether or not you voted, did you have any preference for the office of supervisor of supervisor district No. 3 on or before the third day of November, 1896, and before the day the general election was held in this supervisor district?" An objection having been overruled, he answered: "On election day if I had voted I suppose I would have voted for Mr. Thomas." He was then asked if he had voted at all would he have voted for supervisor. To which he replied: "I don't know but what I would." There was other evidence which tended to show that the witness had voted and that he was not a legal voter.

The court refused to deduct the vote from the tally of defendant, and perhaps in so doing was influenced to some extent by the testimony, improperly admitted, tending to show that the witness had said that he had voted for Smith. There was, however, no testimony as to how he voted except that above set out. I do not think it amounted to evidence. He thought when .

on the witness stand that he would have voted for Thomas if he had voted, and if he had voted he did not know but he would have voted for supervisor. The witness could not have been convicted of perjury for this testimony if it had been proven that he voted for Smith. He may have forgotten how he did in fact vote. At the general election there were many other offices to be filled. The requirement of secrecy is based upon the idea that voters may find it inconvenient to have it known for whom they voted—may, in fact, be weak enough to desire to create the impression that they voted otherwise than as they did vote. They may not be willing to risk their political standing by openly voting independently. And I think results show that many do vote differently from their professions.

Under such circumstances, I think very clear evidence should be furnished as to how one did vote before his vote can be deducted from the total of any candidate. The secret ballot brings many inconveniences, and we must take the bitter with the sweet.

5. We cannot disturb the finding as to the residence of George Phoebus. His evidence was to the effect that he was often absent from Visalia, performing different jobs of work, but that he always left with the intent of returning when his work was done. The evidence is somewhat equivocal, but I think the construction given it by the court was reasonable.

The judgment is affirmed.

McFarland, J., Garoutte, J., Harrison, J., Henshaw, J., and Beatty, C. J., concurred.