[Civ. No. 1547. First Appellate District.—December 1, 1914.]

FRANK J. BERNARDO, Appellant, v. JOSEPH RUE, Respondent.

ELECTION CONTEST—FILING FINDINGS AND ENTERING JUDGMENT—SECTION 1118A CODE CIVIL PROCEDURE DIRECTORY—JURISDICTION.—The sections of the act of the legislature governing the court's action upon the trial of election contests are directory in the absence of an express provision declaring them to be mandatory; and the court in such proceeding did not lose jurisdiction under section 1118a of the Code of Civil Procedure by reason of its failure to file its findings and enter judgment within ten days after the submission of the case and the granting of a motion for nonsuit.

ID.—CONTEST FOR OFFICE OF SCHOOL TRUSTEE—MISCONDUCT OF ELECTION BOARD—ERRONEOUS NONSUIT.—Where it appeared from the undisputed facts before the court at the time that a motion for a nonsuit was made in an election contest for the office of high school trustee that the election board in one of the precincts disregarded the requirement of section 1253 of the Political Code, which provides that the count by the election board of the number of votes cast at the close of the polls shall be compared with the poll list of voters, and likewise disregarded the succeeding section, which provides the procedure to be followed where two ballots are folded together as a single ballot, and on the night of the day following the election and after the result had been declared, withdrew their official returns from the custody of the clerk of the school district with whom they had been deposited, and altered the same by adding to the recorded vote of one of the candidates the ballots folded together as one, which changed the result of the election, the court erred in granting the motion.

ID.—COMPARISON OF COUNT OF VOTES WITH LIST OF VOTERS—SECTION 1253 POLITICAL CODE.—In such a case it was the duty of the election board, under section 1253 of the Political Code, to compare their

count of the number of the votes cast with the list of voters kept by the clerk.

ID.—BALLOTS FOLDED TOGETHER—SECTION 1254 POLITICAL CODE.—Under section 1254 of the Political Code, if two or more separate ballots are found so folded together as to present the appearance of a single ballot, they must be laid aside until the count of the ballots is completed; then, if upon comparison of the count with the number of names of electors on the lists which have been kept by the clerks, it appears that the two ballots thus folded together were cast by one elector, they must be rejected.

ID.—DOUBLE BALLOTS—DISPOSAL OF.—If the election board, after following the procedure outlined in sections 1253 and 1254 of the Political Code, were in doubt as to whether two sets of double ballots should be counted each as one or as two votes, the succeeding section of the code supplied the procedure by providing that, if the number of ballots is in excess of the names on the list, the ballots must be placed in the box and a number of ballots equaling such excess must be publicly drawn therefrom by one of the judges and destroyed unopened.

ID.—COUNT OF VOTES—TIME FOR—SECTION 1252 POLITICAL CODE.—It is the plain intendment of section 1252 of the Political Code that the election board shall commence their count of the votes at once upon the close of the election and that they shall publicly and in the presence of the bystanders conduct the same without adjournment until such count is completed and the result declared and recorded, and when this is done and the ballots, together with their returns, have been deposited with the clerk of the school district as other sections of the act require, the powers and duties of the election board are at an end; and their jurisdiction over any matter concerned in the election ceases. Thenceforth any review or correction of their returns must be done under the direction of the board of trustees of the school district, or other canvassing board, under the provisions of section 1281a of the Political Code.

ID.—WITHDRAWAL OF OFFICIAL RETURNS—WHEN UNWARRANTED.—In such a case, there was no authority in law for the withdrawal by the election board, on the day following the election, of their official returns from the custody of the clerk of the district for any purpose whatever.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge.

The facts are stated in the opinion of the court.

Ross & Ross, for Appellant.

Barrett & Thomas, and Fabian D. Brown, for Respondent.

RICHARDS, J.—This was a proceeding instituted to contest the election of the defendant to the office of high school trustee at Half Moon Bay, Union High school district, held within said district on April 3, 1914. The action was commenced on April 21, 1914, and came on for trial on the eighth day of May, 1914. The plaintiff's case was presented on that day; and at the conclusion of the evidence offered in his behalf, a motion for nonsuit was on the same day made by the defendant and granted by the court. On the twenty-eighth day of May, 1914, the court filed its findings and caused its judgment to be entered in defendant's favor; and from the order granting said motion for nonsuit and from the judgment affirming the election of the defendant to the office in question, the plaintiff prosecutes this appeal.

The first point urged by the appellant is that the case having been submitted and the motion for nonsuit granted on May 8, 1914, it was the duty of the court under section 1118a of the Code of Civil Procedure to file its findings and enter its judgment within ten days after the submission of the case; and that the court, having failed to do so within said time, lost jurisdiction to render its decision or enter a judgment after the expiration of the ten day period within which it was permitted by the statute to act; and hence that the judgment rendered and entered in this proceeding is a nullity and must be reversed. We incline to the opinion that the sections of the act governing the court's action upon the trial of proceedings of this character are directory in the absence of an express provision of the statute declaring them to be mandatory, and that, while the recent amendment to the Code of Civil Procedure, by which section 1118a was added, was evidently intended to hasten the work of the courts in passing upon election contests, it was not intended thereby to provide that the parties to an election contest should lose valuable rights because of the delay of the judge in making or filing his findings and judgment. We think therefore that this point of the appellant is not well taken.

The appellant further contends that the court erred in granting the motion for nonsuit at the close of the plaintiff's case. The practically undisputed facts before the court, upon which such motion for nonsuit was made and granted, are these: On the third day of April, 1914, two elections were held in the town of Half Moon Bay, one for the election of a

grammar school trustee and one for the election of a high
school trustee, the polls of each of these elections being in
different places.   During the progress of the high school elec-
tion a voter was noticed to have inadvertently dropped a
grammar school ballot into the box at the time of the deposit
of his high school ballot; when the polls closed the ballots
cast were dumped out of the ballot box on a table and with
the exception of this particular grammar school ballot, were
counted, when it was found that 287 ballots had been cast.
The election board did not compare this count of the ballots
with the poll list of voters, as required by section 1253 of the
Political Code, but proceeded to open the ballots and an-
nounce the count of the names written thereon.   In so doing,
it was found that there were four additional grammar school
ballots, which were cast aside; during the progress of the
count two high school ballots, folded together as one, were
found, which the inspector declared "a stuffed ballot" and
which was laid aside without being unfolded or counted at
the time.   Presently two other ballots folded together as one
were found, which were similarly laid aside without unfold-
ing or counting.   When the count was completed, it was
found that the plaintiff Bernardo had received one hundred
and sixty-four votes and the defendant Rue one hundred and
seventeen, and that there were four grammar school votes not
counted for either.   After the completion of the count, as
above set forth, and while the judges of the election were in
the act of writing down on their official tally-list how many
votes had been cast for the respective candidates, the inspector
took up one of the two sets of double ballots and opened it
and separated the ballots and showed them to the defendant
Rue and then asked "What are we going to do with these two
ballots?   They could have slipped together very easily when
they were thrown in together.   I think it is right to give them
to Mr. Rue."   The board so decided, over the protest of the
plaintiff Bernardo, and credited Mr. Rue with the two extra
votes, making his total number 119 votes and also making
the total number of votes counted tally with the initial
count of the ballots before the canvass began, but leaving the
other of the two double sets of votes unopened and uncounted
and out of question for the time being.   The board then pro-
ceeded to fill out the official sheet showing the returns of the
election, and after doing so they gathered up all of the ballots,

including the four grammar school ballots and also the remaining unopened and uncounted double set of ballots, and threw them into the ballot box, which they then delivered, together with their official returns of the election, to the clerk of the high school district, who was not a resident of this precinct nor a member of this election board, and thereupon the election board and the bystanders dispersed.

In the mean time the election had also proceeded in the seven other polling places of the high school district, with the result that the plaintiff Bernardo received in these one hundred and thirty-one votes and the defendant Rue, one hundred and seventy-six votes; these, added to the votes of each in the polling place in question, would give to each of the candidates a total of two hundred and ninety-five votes and create a tie election.

It is fairly inferable that this result was known to the members of the election board of the precinct in question at least by the following day; but however this may be, the undisputed evidence shows that on the following night, at least twenty-four hours after the election of the previous day was closed, and the vote canvassed, and the result announced and recorded, and the ballot box and official returns deposited with the clerk of the district, the members of this election board re-assembled in the back room of the saloon of one of their number and which was a different place from that where the election had been held; and there, about 9 o'clock in the night-time and in the absence both of the public and of the contestants in the election, the members of the board proceeded to alter their formal official returns, which in some way not revealed by the record they had recovered from the clerk of the district, so as to add to the already recorded vote of the defendant Rue two additional votes, presumably those contained in the set of double ballots which so far as the record discloses they had never opened nor examined nor counted; the effect of this alteration was to give to the defendant Rue upon the face of the altered returns a majority of two votes in the election.

The foregoing undisputed facts were before the court in this proceeding at the time the motion for nonsuit was made. They show upon their face such a state of facts and such a repeated and willful disregard of the plain letter of the law regarding elections as would seem to render it perfectly plain

that a motion for nonsuit ought not to have been granted in this case. Conceding the respondent's contention that the provisions of sections 1252–1260 of the Political Code are directory and that in the absence of *insignia* of fraud election boards will not be held to a strict compliance with the statute, it would seem clear that if this election board had followed the direction of the sections of the act above quoted, the result at which they arrived would have been impossible without a fraudulent purpose. It was the duty of the board under section 1253 of the Political Code to compare their count of the number of votes cast with the list of voters kept by the clerk. Had they done this they would have found that the count of the votes cast either did or did not correspond with the poll list, and this knowledge would have guided that board in determining whether the two sets of votes folded together were each to be counted as one vote or as two; but, having disregarded this requirement of section 1253, the board also proceeded to disregard the succeeding section of the code, which reads:

"If two or more separate ballots are found so folded together as to present the appearance of a single ballot, they must be laid aside until the count of the ballots is completed; then, if upon comparison of the count with the number of names of electors on the lists which have been kept by the clerks, it appears that the two ballots thus folded together were cast by one elector, they must be rejected."

If the foregoing two sections of the code had been followed and if the board were then still in doubt as to whether the two sets of double ballots should be counted each as one or as two votes, the succeeding section of the code supplies the procedure by providing that, if the number of ballots is in excess of the names on the list, the ballots must be replaced in the box and a number of ballots equaling such excess must be publicly drawn therefrom by one of the judges and destroyed unopened. It is evident that the election board were in some doubt as to whether these two sets of double ballots were illegal and whether if divided they would cause the number of votes to exceed the number of voters, for they laid both of them aside during the regular count and did not in fact open or count one of these double sets of ballots at all. These repeated divergences from the plain letter of the statute, conceding it to be directory, nevertheless indicate the

26 Cal. App.—8

drift of this election board toward the precipice of a positive violation of the election laws, which of itself should suffice to invalidate this election. Section 1252 of the Political Code provides as follows:

"As soon as the polls are finally closed the judges must immediately proceed to canvass the votes given at such election. The canvass must be public, in the presence of bystanders, and must be continued without adjournment until completed and the result thereof is declared."

It is the plain intendment of this section of the act that the election board shall commence their count of the votes at once upon the close of the election and that they shall publicly and in the presence of the bystanders conduct the same without adjournment until such count is completed and the result declared and recorded. When this is done and the ballots, together with their official returns, have been deposited with the clerk of the school district as other sections of the act require, the powers and duties of the election board are at an end; and their jurisdiction over any matter concerned in the election ceases. Thenceforth any review or correction of their returns must be done under the direction of the board of trustees of the school district, or other canvassing board, under the provisions of section 1281a of the Political Code. There was therefore no authority in law for the withdrawal by this board, on the day following the election, of their official returns from the custody of the clerk of the district for any purpose whatever; and conceding their action in this regard to have been inspired by an honest motive, it was clearly beyond their lawful power. It is difficult, however, to make even this concession, in view of the circumstances under which this election board effected the alteration of their official returns. The conduct of the members of the board in re-assembling in the night of the following day, twenty-six hours after the election, privately and in the back room of a saloon, and in there attempting to so alter their official returns as to change the result of an election, made up a series of improprieties which of themselves and even in the absence of any other lapses in the course of the election should have led the trial court to deny a motion for nonsuit and require affirmative proof justifying such a course of action and clearly establishing an integrity of motive as well as a rightfulness of result on the part of this board.

Whether or not a motion for nonsuit is the proper proceeding in an election contest may be open to question, in view of the language of section 1221, et seq., of the Code of Civil Procedure, requiring the court to hear and determine the proofs and allegations of the parties, and to file its findings of fact and pronounce its judgment either confirming or annulling such election, and also in view of the fact that an election contest is not an ordinary adversary proceeding between private parties but is a proceeding in which the public is vitally interested and concerned. However this may be, it appears that in the case at bar the court, in addition to granting the motion for nonsuit, made and filed its findings of fact and conclusions of law at the time of entering its judgment in the case. The findings of fact of the court are as follows:

"I. That all of the allegations of plaintiff's and contestant's complaint and petition are untrue, except the allegations contained in paragraphs I, II, III, and IV thereof, which are hereby found to be true, and except the allegations thereof admitted to be true by defendant's answer, which are hereby found to be true.

"II. That all of the allegations contained in the answer of defendant and respondent on file herein are true."

In order to test the correctness of the foregoing findings, it is necessary to examine the answer of the defendant. It is found to consist of several pages of specific denials of the averments of plaintiff's pleading and also of several more pages of affirmative matter set forth as a separate answer and defense to plaintiff's action. The defendant having made a successful motion for nonsuit at the close of plaintiff's case, was not required to offer and in fact did not offer any evidence in support of the averments of his answer. One of the averments of defendant's answer was the affirmative allegation that the election officers "did publicly, correctly and rightfully announce and declare that 164 votes had been cast in said school district for plaintiff and contestant and that 121 votes had been cast for said defendant and respondent herein." This affirmative averment of the defendant's answer was not only unsupported by any evidence in the case, but was positively negatived by the affirmative and undisputed evidence above set forth, showing that the only time and manner in which the election board ever declared that the defendant Rue had received 121 votes in the election was

upon the occasion referred to, when, twenty-six hours after the election was over and after the functions and power of the board had ceased, they privately, illegally, and wrongfully and in a place where they had no business to conduct any part of the official proceedings of the election, changed the official returns so as to show a different result from that recorded upon the day of the election and so as to change the result of the election itself. This is but one of a number of affirmative allegations of the defendant's answer, which were not only not supported by the evidence, but were directly negatived by the undisputed proofs in the case. There are other alleged errors in the record; but the foregoing considerations render unnecessary their determination upon this appeal.

The order granting a nonsuit and the judgment confirming the respondent's election are reversed and the cause remanded for a new trial.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 31, 1914.