[Civ. No. 5386. Third Appellate District.—November 19, 1935.]

IRA R. MORRISON, Appellant, v. HENRY W. WHITE et al., Respondents.

J. Oscar Goldstein for Appellant.

Charles A. Walker, District Attorney, Coyle E. Bybee, William J. Locke and Louis Bartlett for Respondents.

PULLEN, P. J.—This is an appeal from a judgment rendered in an action for a recount of votes cast in a special election on the proposed establishment of the Bidwell Municipal Utility District, which included the city of Chico, a municipality having a charter form of government, and also certain adjoining unincorporated contiguous territory.

In an opinion filed this day we have held valid all of the proceedings leading up to and including this election. (Mor-

*rison* v. *White, ante,* p. 261 [52 Pac. (2d) 261].) We are here concerned solely with the question pertaining to the result of the special election in the municipality of Chico, wherein appellant contends the proposition for the formation of said utility district was in fact defeated. The board of supervisors of Butte County canvassed the returns of said election and after such canvass declared that the election was carried in said incorporated city of Chico by a majority of nineteen votes and in the unincorporated area included in the proposed utility district by a majority of 251 votes. After a certificate declaring said result by the board of supervisors had been filed as provided by law, plaintiff herein, a qualified voter of the city of Chico, filed a contest of said election upon various grounds, principally claiming that the proposition had not carried by a majority of nineteen votes but in fact was defeated in said municipality, and hence said district could not be declared established as a matter of law. The trial was had on said issue and after such trial and a recount of the ballots cast within the municipality of the city of Chico, the court made its finding and judgment against plaintiff and held that said election was in fact carried in the municipality by a majority of three votes, and in the unincorporated territory by a majority of 251 votes.

No question is here raised relative to the result as declared in the unincorporated area of said proposed district but appellant confines this contest to the findings of the court that the election was carried in the incorporated city of Chico by a majority of three legal votes.

Thirteen questioned ballots are submitted to this court for a ruling, all of which appellant claims were illegally rejected or improperly counted. Upon the proper determination of the legality of these ballots depends the outcome of this contest. We will now proceed to an examination of the several disputed ballots.

█ In Chico precinct No. 16 there was cast and counted as a ''Yes'' vote, a ballot from which the serial number in the upper left-hand corner had not been removed by the inspector, and also upon the face of which, in the column providing for the proposition, was a cross made of two intersecting pencil lines approximately two inches in length. It is the contention of appellant that this ballot should have been rejected as a spoiled or canceled ballot.

As to the claim that the ballot is void because of the attached stub, *Farnham* v. *Boland*, 134 Cal. 151 [66 Pac. 200, 366], is authority to the contrary. The failure to remove the stub cannot be construed as an identifying mark, as the law refers to marks made by the voter and it is only marks so made that demand rejection of the ballot. This principle is also upheld in the case of *Freshour* v. *Howard*, 142 Cal. 501 [77 Pac. 1101].

As to the contention that the pencil marks across the right side of the ballot in the square labeled "Proposition" indicated a spoiled or canceled ballot likewise cannot be supported.

Section 1207 of the Political Code provides: " . . . Any voter who shall spoil a ballot shall return said spoiled ballot to the ballot clerk and receive another one in its place, one at a time, not to exceed three in all. · All the ballots thus returned shall be immediately cancelled by drawing a cross upon the face thereof, . . . said cross to be more than three inches square . . . , and immediately upon the closing of the polls and before any ballot shall be taken from the ballot boxes or either thereof, the ballot clerks must, in the presence of all persons in the room who may desire to observe the same, proceed to deface every unused or spoiled ballot by drawing across the face thereof in ink or indelible pencil two lines which shall cross each other; said cross to be more than three inches square and said ballot clerks shall thereupon, immediately, and before any ballots be taken from the ballot boxes or either thereof, place the said ballots thus defaced in an envelope and seal said envelope, and thereupon a majority of the election officers shall immediately write their names across the sealed portion of said envelope."

The questioned ballot was not found among the unused or spoiled ballots and the legal requirements with respect to spoiled ballots not having been complied with by the election officers it must be assumed that the ballot was properly cast and counted as a "Yes" vote and should be accordingly accepted as such.

The next ballot submitted is a ballot cast in Chico precinct No. 6, upon which the number still remained attached in the upper left-hand corner, and upon the back in pencil were written the words "spoiled ballot". As we have heretofore indicated the presence of the numbered stub is not ground

for rejection of the ballot. The fact also that there had been written across the back, the words "spoiled ballot" is not sufficient to classify the ballot as such, as it does not conform to the requirements of section 1207 of the Political Code heretofore quoted in regard to the method of indicating a spoiled ballot, and there being nothing upon the face of the ballot to indicate that it was a spoiled ballot nor any testimony of the election officers to that effect nor was it found among the spoiled ballots. This ballot should therefore have been counted as a valid "No" vote.

A group of five ballots are presented from Chico districts Numbers 1, 6, 19, and 30. These ballots are marked either with lead pencil or with some blunt instrument as perhaps the corner of the stamp or the end of a lead pencil. The markings made upon the ballots other than those made by lead pencil were large, irregular and blurred. They obviously were not marked with the rubber stamp provided by the election officers for stamping the ballots, which stamp was properly used by all other voters in the precinct. In the case of *Evarts* v. *Weise,* 176 Cal. 218 [168 Pac. 122], the court had before it certain ballots cast in a general election and marked with a large cross apparently made with the blunt end of a pen or pencil holder. These ballots were allowed by the court because there was no evidence in the record disclosing the size or character of the stamps used in the several precincts in which the ballots in question were cast; the court saying: "Yet, we cannot say from the mere appearance of the ballots and in the absence of evidence *dehors* the ballots themselves showing or tending to show by what means the marks were made that said marks or crosses were not produced by means of a stamp . . . " The court further said in regard to these particular ballots. "All the marks upon the five ballots it should be explained are substantially the same or of the same general character."

In the case at bar there were several hundred ballots cast, each marked with the regular legal rubber stamp and an inspection of the questioned ballots here clearly shows they were not marked or stamped with the legal stamp furnished for use by their officers in these precincts, nor were the particular markings uniform, but each was a distinct and individual mark, not stamped but drawn. Furthermore, section 1205 of the Political Code prescribes the use of a rubber

stamp in voting. The pertinent language of the statute is as follows:

"In case of a question, proposition or constitutional amendment submitted to the vote of the electors, the voter shall mark his ballot by stamping in the appropriate voting square a cross (X) opposite the answer he desires to give as to such question, proposition or constitutional amendment. All crosses shall be made only with a stamp, which, with necessary pads and ink, shall be provided by the officers who by law are required to furnish the election supplies for each booth or compartment provided for the marking and preparation of ballots."

The case of *Evarts* v. *Weise, supra,* is not contrary to the rule laid down in such cases as *Sweetser* v. *Pacheco,* 172 Cal. 137 [155 Pac. 639], where the court in a contest over a county office where the crosses were made with a lead pencil said the intent of the voter could be expressed only by stamping a cross in the voting square and lacking such stamped cross the ballot could not be counted. "The express language of the law forbids it." Also in *Castagnetto* v. *Superior Court,* 189 Cal. 673 [209 Pac. 549], the court said: "Said section 1205 contains the provision that 'all crosses shall be made only with a stamp', and is mandatory in that regard."

To hold that the use of the word "shall" in the section was merely permissive or directory only would. be to rob the section of all its force and its enactment an unnecessary act. Without doubt it was the intention of the legislature, in the interest of uniformity and to guard against illegal voting to compel the use of the prescribed method of voting, that is by stamping a cross, made only with the stamp provided by the election officers. The ballots here marked are not therefore legal votes.

There was a ballot cast in Chico No. 1 which showed two crosses for a director in Ward One, and no other mark on the ballot, except the vote on the proposition in the square marked "Yes". It is the contention that the superfluous cross in the square for director in Ward One, in view of the fact that no cross at all was placed in any of the squares relating to the other four wards was put there to identify the ballot. This contention is untenable and the vote was properly recorded as an affirmative vote.

Section 1211, subdivision 4, of the Political Code provides: "No mark upon a ballot which is unauthorized by this act shall be held to invalidate such ballot, unless it shall appear that such mark was placed thereon by the voter for the purpose of identifying such ballot."

In Chico precinct No. 12, a ballot was allowed as a "Yes" vote which contained a cross not only in the blank space opposite the word "Yes", but also another cross superimposed over the word "Yes". It was contended by appellant that this also was an attempt to identify the ballot. This was similar in principle to the foregoing objection, and the vote was properly recorded as a "Yes" vote.

Another ballot cast in Chico precinct No. 16 had one cross in the space opposite the word "Yes" and another cross immediately after the word "Proposition". This also was contended by appellant to have been a marked ballot but the trial court was correct in allowing the ballot as a "Yes" vote.

There is nothing on any of these ballots last referred to which indicates any intent to identify the ballot. In the case of *Sweetser* v. *Pacheco, supra,* it was contended that a cross near the upper right-hand corner of the ballot on the margin to the right of the "Direction to Voters" constituted a distinguishing mark invalidating the ballot. The court held there was nothing to show that the cross was the result of a deliberate impression of the stamp and nothing to indicate it was not inadvertently made, and it could not be held that an examination of the ballot indicated that the cross placed thereon by the voter was for the purpose of identifying such ballot. Upon another ballot in the same case a voter had stamped a cross over the word "Yes" as to several propositions and then had stamped a cross in the square. The court there held that there was nothing to indicate any intent to identify the ballots and they were properly counted as effective ballots.

 Another objection is here made to a ballot cast in Chico precinct No. 26, wherein a cross properly made appears after the word "Yes" and a light smudge or erasure appeared after the word "No". The ballot clearly indicates the intention of the voter to cast an affirmative vote and it cannot be held that there is any indication that the erasure was intended as a distinguishing mark.

When the envelope containing the ballots of Chico precinct No. 18 was opened before the trial court upon the hearing of the contest, by inadvertence a small packet of ballots was overlooked. After a recount had been concluded and after findings and conclusions were signed and the judgment entered, the attorney for contestant obtained an order from the trial court to make copies of certain of the ballots. Upon the reopening of the envelope of Chico precinct No. 18, a small packet of ballots tied with a string was found in the bottom of the container. Upon opening this small packet it was found to contain nine ballots from which the serial numbers had been detached but which did not show a cross in any place, with the exception of one ballot which appeared upon its face to be a valid "No" vote.

Respondent objects to the counting of this ballot as the discovery came too late; that the ballots had not been presented to the trial court at the time set for the examination and recount of the ballots, and therefore should not now be considered by this court in passing upon the judgment and findings of the trial court. Inasmuch as the allowance or disallowance of this ballot will not affect the outcome of the contest we do not deem it necessary to pass upon the objections urged.

The foregoing constitute all of the ballots that respective counsel deem of sufficient importance to challenge, and having examined the various objections urged to the rulings of the trial court we find that the Proposition to create the Bidwell Municipal Utility District has been carried, and the judgment of the trial court so holding is hereby affirmed.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 16, 1936.