[Civ. No. 2424. Fourth Appellate District.—April 25, 1939.]

CAL D. LESTER, Respondent, v. DAVID FAIRBAIRN, Appellant.

Drumm, Tucker & Drumm and J. B. Tucker for Appellant.

Warren L. Schutz and Leo J. Friis for Respondent.

BARNARD, P. J.—This is an appeal from a judgment in an action for a recount of the votes cast in an election held in Orange Township, in Orange County. David Fairbairn was declared by the board of supervisors, acting as a canvassing board, to have been elected to the office of justice of the peace of that township by a majority of eight votes. Cal D. Lester brought this action for a recount, as a result of which he was declared to have been elected by a majority of one vote. From the judgment entered Fairbairn has appealed.

While more than 5,000 votes were cast for this office at this election, only a few are here questioned and in these instances the original ballots have been transmitted to this court and are before us.

The first ballot which is questioned is contestant's "exhibit 19", which was counted for Lester. It is very clear that the crosses on this ballot were not made with the stamp provided by the officers, as required by section 1205 of the Political Code. The nature of the stamp provided is apparent from the many other ballots in evidence which, with the exception of the absentee ballots, disclose the form of stamp used. While the crosses on this ballot were made with some form of ink they are not uniform, each is a distinct and individual mark, and it is perfectly clear that each cross was not stamped but was drawn with an edge of the stamp or with some other instrument. The cross marked for Lester having been drawn and not stamped with the stamp provided by the officers, this ballot was improperly counted for him.

(*Morrison* v. *White*, 10 Cal. App. (2d) 266 [52 Pac. (2d) 263].)

■ It is next contended that the court erred in rejecting contestee's exhibits "P" and "X" and that the court should have counted both of these ballots for Fairbairn. In each of these instances a heavy cross is stamped opposite the name of Fairbairn and a lighter cross opposite the name of Lester. It is perfectly clear that neither of these crosses is an offset or blot from another mark, and in each instance a stamped cross clearly appears opposite each name. It cannot be told for whom these voters intended to vote and both ballots were properly rejected. (*Evarts* v. *Weise*, 176 Cal. 218 [168 Pac. 122].)

■ The next ballot questioned is contestee's exhibit "M", which was stamped for Fairbairn and rejected by the court. It appears perfectly regular on its face, but it was found in an envelope which was marked "Spoiled and Unused Ballots". However, the ballot was not marked across its face in the manner provided by section 1207 of the Political Code for a spoiled or unused ballot. Further, there is no proof that the envelope in which this ballot was found was marked with the signatures of the election officers, as required by said section. It was suggested on the oral argument that evidence was available which might clarify the situation with respect to this ballot. There is no evidence before us as to the total number of votes cast and the number of spoiled ballots, from which it can be determined whether or not another ballot may have been given to a voter in place of this one. Since a rehearing is necessary, further evidence should be taken relating to the validity or invalidity of this ballot.

■ This brings us to the ballots cast by the absentee voters, of which twelve were marked for Fairbairn and ten for Lester. Two of those marked for Fairbairn contain crosses made with pen and ink, were accepted and counted, and are not questioned here. The remaining twenty were rejected by the court, nineteen of them on the ground that they had not been marked with an indelible pencil.

Section 1359 of the Political Code provides that an absent voter may mark his ballot by making a cross with the stamp provided by the officers, with pen and ink, or with an indelible pencil. In passing upon these ballots the court stated that the purpose of the statute "is to require the cross to

be made by some substance which cannot be readily eradicated or erased''. The court further stated: ''Now, regardless of the name or brand or the kind of pencil used, if the court or anyone else can take an ordinary lead pencil eraser like the one I hold in my hand and erase that, certainly that isn't the kind of 'indelible pencil' which the statute requires and that is what I did. That is the test I made on every one of those ballots.'' It appears that the court rejected nineteen of these ballots because he was able to erase portions of the marks made with an ordinary eraser. The court refused to permit the appellant to offer the testimony of experts upon the question as to whether a part or all of these ballots were, in fact, marked by an indelible pencil.

We think that the court erred in this ruling and in rejecting these nineteen ballots on the ground that the crosses marked thereon could be readily erased by an ordinary pencil eraser. The respondent argues that the true meaning of the statute is that a ballot shall be marked with a pencil which makes a mark which is not capable of being removed or erased. The statute does not provide that the mark made by the pencil shall be indelible, but merely that an indelible pencil shall be used. Indelible pencils are very common and most people are more or less familiar with the marks made by them. It requires but slight observation and experiment to demonstrate that the fact that a mark can be erased is not sufficient, in itself, to show that the mark was not made with an indelible pencil. While certain pigments might be left in the paper after erasure, the mark made by an indelible pencil can frequently be erased leaving an appearance, so far as visible to the naked eye, similar to that left by the erasure of a mark made by an ordinary pencil. A much better test is to moisten the pencil marks. Very often in such a case the mark of an indelible pencil shows a purplish or greenish tinge which is readily discernible. Even that test is not infallible, and much depends upon how the mark is made and the kind and quality of the paper. Of the nineteen ballots here in question, it appears to us that eight of those marked for Fairbairn and seven of those marked for Lester were made with an indelible pencil. One of those marked for Fairbairn appears to have been made with an ordinary pencil, and another marked for Fairbairn and two others marked for Lester appear more doubtful and should be examined with facilities which are not available to us.

In view of what is frequently done by modern scientific methods it seems incredible that properly qualified persons, by the use of powerful microscopes, chemicals and other means, could not throw light upon the question as to whether certain of these ballots were or were not marked with an indelible pencil, although the truth in that regard may not clearly appear from an examination with the naked eye. Expert evidence was peculiarly appropriate in this case and should have been received for any possible aid to the court.

The other absentee ballot, contestee's exhibit (for identification) number 33, while marked with some form of ink was properly rejected. This was one marked for Lester. All of the marks on this ballot are in the form of a square and have the appearance of having been stamped with a square instrument similar to the square erasers found on some pencils. There is no cross and the marking in no manner complies with the requirements of section 1359 of the Political Code and the ballot should not be counted.

The respondent questions certain ballots which were accepted by the court and counted for Fairbairn. It is first contended that contestee's exhibit "Z" and "F–1" were improperly accepted because there were certain distinguishing marks on the ballot. Exhibit "Z", in seventeen places, being all of the places where that voter voted, had a cross made with a pencil and a cross made with the proper stamp superimposed thereon. A similar thing appears on exhibit "F–1", except that the pencil crosses appear after all of the state, congressional and legislative candidates for which the voter voted and does not appear on the remainder of the ballot, the vote for Fairbairn being marked only with the regular stamp. Apparently these voters marked certain of the candidates for whom they intended to vote, with a pencil, and then used the regular stamp. It in no way appears that these pencil crosses were placed upon these ballots for the purpose of identifying them and, under the 1903 amendment to section 1211 of the Political Code, the court was justified in accepting and counting these ballots. (*Turner* v. *Wilson*, 171 Cal. 600 [154 Pac. 2].) It is urged that in contestee's exhibit "O", the cross after the name of Fairbairn is a reprint of the cross marked opposite the name of another candidate and that the ballot should not have been counted. It is perfectly clear that the cross in question is not a reprint of another mark and the court correctly counted the ballot.

 The respondent further challenges contestee's exhibits "B–1", "C–1" and "D–1", which were counted by the court in favor of Fairbairn. It is contended that the cross opposite the name of Fairbairn in exhibit "B–1" was stamped with some blunt instrument different from the regulation election stamp. It clearly appears that this cross was made with the regular stamp and that the voter either had too much ink on the stamp or pressed down too hard. It is claimed that exhibits "C–1" and "D–1" contained distinguishing marks in that, in each instance, the voter voted both yes and no on one of the "questions and propositions submitted" and two red circles appear around the two crosses on each ballot. Apparently these were placed thereon by the election officers or someone else to call attention to the fact that the voter had voted both ways on a particular proposition. In any event, both ballots were properly received under the rule set forth in *Turner* v. *Wilson, supra.*

The action should be retried and further evidence taken in accordance with the suggestions above made. Obviously, it would serve no useful purpose to recount any of the ballots other than those which have been questioned on this appeal.

The judgment is reversed with directions to the trial court to take further evidence as herein indicated, to make appropriate findings from the entire evidence in the case and in accordance with the views herein expressed, and to enter a judgment in accordance with such findings.

Marks, J., and Griffin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 22, 1939. Edmonds, J., did not participate in the ruling.