[Sac. No. 5956. In Bank. Aug. 20, 1948.]

JOHN N. GARRISON, Respondent, v. JOHN D. ROURKE, Appellant.

Frank E. Carleton for Appellant.

Carr & Kennedy and Laurence J. Kennedy, Jr., for Respondent.

SHENK, J.—J. N. Garrison and John D. Rourke were opposing candidates for the office of Assessor of Trinity County in the November 1946 general election. The official canvass of the returns showed that Garrison received 1,026 votes and Rourke 1,028 votes, whereupon the latter was declared elected. Garrison, as contestant—plaintiff, filed in the superior court a contest of the election and judgment was rendered in his favor. The defendant Rourke prosecutes this appeal.

The first asserted ground for reversal is that the trial court lost jurisdiction to enter judgment because the findings of fact and conclusions of law were not filed within the 10 days after submission as prescribed by section 8556 of the Elections Code.

The contestant filed his statement of contest with the county clerk (Elec. Code, § 8530) within 30 days after the declaration of the result of the election (§ 8531). A written list of alleged illegal votes was served and filed by each party before trial (§ 8532). Within five days after filing of the statement of contest the county clerk notified the superior court that the contest had been filed whereupon the court ordered a special session to be held within the 20-day limitation of section 8550. The special session commenced January 14, 1947, and consumed five days. At the close of the hearing the court ordered briefs to be presented and upon the filing thereof the case to be deemed submitted. The last brief was filed on March 10, 1947, within the time allowed by the court. Findings of fact and conclusions of law dated April 16th, 1947, were filed on April 18th, 1947, declaring that the correct legal count for contestant was 1,027, and for the defendant 1,022. Judgment that the contestant was the duly elected assessor of Trinity County (§ 8557) was entered the same day. A certificate of election was therefore issued to the contestant (§ 8570) ; the judgment annulled any certificate of election previously issued to the defendant

(§ 8571) ; and the contestant entered upon the performance of his duties pending the appeal (§ 8575).

Section 8556 of the Elections Code reads: ''The court shall continue in special session to hear and determine all issues arising in contested elections. After hearing the proofs and allegations of the parties and within ten days after the submission thereof the court shall file its findings of fact and conclusions of law, and immediately thereafter shall pronounce judgment in the premises, either confirming or annulling and setting aside the election. The judgment shall be entered immediately thereafter.''

It is apparent that the court did not continue in special session ''to hear and determine'' all issues, but directed that the arguments of the parties be submitted on briefs; and did not file its findings and conclusions within 10 days after ''submission thereof.'' The question is whether by this departure from the procedure the court lost jurisdiction to determine the issues and enter judgment.

The provision that the court should continue in special session to hear and determine the issues and file its findings and conclusions within 10 days after submission was added to section 1118 of the Code of Civil Procedure in 1907 (Stats. 1907, p. 643). In 1914, in *Bernardo* v. *Rue*, 26 Cal.App. 108 [146 P. 79], involving somewhat similar facts, it was contended that by the failure to file findings of fact and conclusions of law within the 10-day period the trial court lost jurisdiction to render a judgment and that the judgment entered was therefore a nullity and should be reversed. It was held that the sections of the act governing the court's action in the trial of proceedings of this character were directory in the absence of an express provision of the statute declaring them to be mandatory. The court pointed out that while the parties had valuable rights an election contest was not an ordinary adversary proceeding between private parties, but was one in which the public also had a vital interest; that provisions which were evidently intended merely to hasten the work of the court could not be deemed to deprive the parties and the public of their respective rights. The defendant does not question that that case stated the correct construction of the statute in accordance with the rule therein applied. Nor does he question the general rule that when a statute has been judicially construed and as here is reenacted in substantially the same language there is a strong presumption of a legislative intent to adopt that construction (*Holmes* v. *McColgan,*

17 Cal.2d 426, 430 [110 P.2d 428]; see also cases cited in *Penaat* v. *Terwilliger*, 23 Cal.2d 865 at page 871 [147 P.2d 552]). However the defendant calls attention to the reservation in the Bernardo case that the statutory provisions were to be deemed directory "in the absence of an express provision of the statute declaring them to be mandatory." He contends that when the Legislature in 1939 reenacted the same provision as section 8556 of the Elections Code, the strong presumption to adopt the prior judicial construction was conclusively rebutted by the enactment in the same year of section 15 of the same code defining the word "shall," when used in the code to be mandatory and the word "may" to be permissive. Therefore, asserts the defendant, there is here an express provision declaring the mandatory nature of the code provision, with the result contended by him.

 Section 5 of Article VI of the Constitution of this state (see *Dudley* v. *Superior Court*, 13 Cal.App. 271, 274 [110 P. 146]), and article 3, chapter 2, division 10 (§§ 8550-8557) of the Elections Code, vest in the superior court jurisdiction to hear and determine election contests, and to confirm or annul a contested election, or to declare that some other person has been elected. The jurisdiction thus vested may not lightly be deemed to have been destroyed. The intent to divest the court of jurisdiction by time requirements is not read into the statute unless that result is expressly provided or otherwise clearly intended. The consequence or penalty for the failure of the court to file findings of fact and conclusions of law within the designated period was not included in the statute. The defendant does not present a case where such a result ensued in the absence of the express requirement. That it was not to occur unless expressly provided is demonstrated by the fact that when the Legislature wished to indicate that intent it adopted the simple expedient of including an express provision to that effect. (See Code Civ. Proc., § 660, limiting the time for passing upon a motion for new trial; Code Civ. Proc., § 657, limiting the time when the court may file an order specifying insufficiency of the evidence as a ground for granting new trial.) The case of *Thomas* v. *Driscoll*, 42 Cal.App.2d 23 [108 P.2d 43], involved section 657 of the Code of Civil Procedure, and the correct rule is indicated in that decision as follows: A time limitation for the court's action in a matter subject to its determination is not mandatory (regardless of the mandatory nature of the language), unless

a consequence or penalty is provided for failure to do the act within the time commanded. (See also *In re Shafter-Wasco Irr. Dist.*, 55 Cal.App.2d 484 [130 P.2d 755].) When *McQuillan* v. *Donahue*, 49 Cal. 157 was decided, section 632 of the Code of Civil Procedure limiting the time within which the court "must" file its written decision upon trial of a question of fact, also provided that unless the decision was filed within the prescribed time the action "must" be tried again. But it was concluded that the provision was directory only.

The result of a different conclusion in the present case would be to divest the court of jurisdiction by mere implication. ▮ While the courts are subject to reasonable statutory regulation of procedure and other matters, they will maintain their constitutional powers in order effectively to function as a separate department of government. (*Lorraine* v. *McComb*, 220 Cal. 753, 756 [32 P.2d 960] ; *Brydonjack* v. *State Bar*, 208 Cal. 439, 442 [281 P. 1018, 66 A.L.R. 1507].) Consequently an intent to defeat the exercise of the court's jurisdiction will not be supplied by implication. To what extent the Legislature may constitutionally enact regulations affecting procedure which will defeat or interfere with the exercise of jurisdiction or of the judicial power (see *Ex parte Harker*, 49 Cal. 465; *Chinn* v. *Superior Court*, 156 Cal. 478, 480 [105 P. 580] ; *In re Garner*, 179 Cal. 409, 412 [177 P. 162]), is not necessary to determine in the absence, as here, of provisions clearly indicating that intent. ▮ It is sufficient to point to the public interest in and the general legislative intent to maintain the purity of elections and effect the speedy determination of election contests. As pointed out in *Bernardo* v. *Rue, supra* (26 Cal.App. at p. 110), the statute affords the basis for a speedy determination of an election contest. But it does not follow that the failure of the parties to invoke those provisions in the trial court could reestablish by consent a jurisdiction that had been destroyed. (See *Harrington* v. *Superior Court*, 194 Cal. 185, 188 [228 P. 15].) Furthermore, it is the public interest, not the parties' claims, which is the paramount legislative concern. (*Sweeny* v. *Adams*, 141 Cal. 558, 560 [75 P. 182] ; *Minor* v. *Kidder*, 43 Cal. 229, 236 ; *Bernardo* v. *Rue, supra*, 26 Cal.App. 108, 115.) That interest is to ascertain the will of the people at the polls, fairly, honestly and legally expressed. The outcome of the present election contest is to give the office to the candidate shown to have been legally entitled to it; and while expedition in arriving at a determination of

the issues is desirable in accomplishing the objective, speed is not the primary statutory aim but is merely incidental to the main purpose of the law.

Reading the provisions of section 8556 of the Elections Code as invoked by the defendant would therefore lead to the result of defeating the aims and purposes of the statute and of raising serious constitutional questions. As indicated in the recent case of *Pulcifer* v. *County of Alameda,* 29 Cal.2d 258, 262 [175 P.2d 1], the legislative intent must be gathered from the statute as a whole, from the nature and character of the act to be done and from the consequences which would follow the doing or not doing of the act at the required time. (See also *In re Shafter-Wasco Irr. Dist., supra,* 55 Cal.App.2d 484.)

By section 5 of the Elections Code the general definition of ''shall'' given in section 15 governs unless the ''provision or the context'' otherwise requires. True, neither the provision nor the context literally otherwise requires; and such literal inconsistent requirement would not be a normal expectation. However, as noted, the provisions of the statute negative any intent to divest the court of jurisdiction and in that sense require a meaning different from the definition of section 15. Section 15 codifies the generally accepted meanings of the words ''shall'' and ''may.'' Section 5 must therefore be deemed to be a codification of the well-known rule that words otherwise generally mandatory or permissive will be given a different meaning when the provisions of the statute, properly construed, require it.

We are thus brought to a consideration of the defendant's contentions concerning the alleged lack of support for the trial court's findings.

The defendant asserts that the statement of contest was insufficient to justify a recount of the ballots. The initial statement was filed within the 30-day period prescribed by section 8531, and included two grounds of contest under section 8511(a) (malconduct of precinct board), one charge under section 8511(d) (illegal votes cast), and two charges under section 8511(e) (errors in the conduct of the election or canvass of the returns sufficient to change the result of the election). Amendments were filed after the expiration of the 30-day period but before the hearing on the defendant's demurrer and motion to strike. At the defendant's request the court permitted argument on the demurrer to the complaint as amended. It is apparently the defendant's conten-

tion that the statement, if originally insufficient, could not be assisted by amendments filed after the expiration of the time limitation prescribed for filing the initial statement. Section 8533 requires that a statement shall not be rejected nor the proceedings dismissed for want of form, if the grounds of contest are alleged with such certainty as to advise the defendant of the particular cause for which the election is contested. It has been held that a contestant may not burden the courts with a recount upon a mere general charge of malconduct referable to all the precincts (*In re Cryer*, 77 Cal.App. 605 [247 P. 252]) ; and the cure of some deficiencies in this and other respects was no doubt intended by the amendments. The right of amendment in election contests has been recognized, and a similar contention concerning an amendment filed after the 30-day period was rejected in *Hannah* v. *Green*, 143 Cal. 19 [76 P. 708], the court stating that the code (now Elec. Code 8533) expressly dispensed with any great particularity, formality or nicety of pleading. (See also, *Abbott* v. *Hartley*, 143 Cal. 484 [77 P. 410] ; *Minor* v. *Kidder*, *supra*, 43 Cal. 229, 237.) There was no error in the ruling on the demurrer and it is not now seriously contended that the statement as amended was insufficient as against a general demurrer. Irregularities if any which might have been subject to special demurrer need not now be considered in view of the hearing on the issues raised by the amended statement and the answer thereto.

Both parties participated in the recount of ballots taken at the trial. Agreement was reached as to all except eight. There are also contentions respecting several claimed illegal votes.

■ Ballot Exhibit B was stamped with a cross in an apparent attempt to vote for one of the candidates for the office of assessor. The printed line between the squares opposite the names of Rourke and Garrison ran just below the middle of the cross. The cross thus was placed partially in each of the squares opposite the candidates' names. The defendant insists it was properly voted in his favor because the majority of the stamp was above the line and in his square, but the court rejected it on the ground that it was impossible to ascertain which candidate was intended. Section 7050 of the Elections Code provides that a cross partly within and partly without *a* voting square or space does not invalidate a ballot. The provision cannot be said necessarily to include within the designation a cross partly within and partly without *two* voting squares. The cross was partly within and partly with-

out each of the voting squares, but obviously it cannot be counted as a vote for each candidate. Whether there was a sufficient portion of the cross in the square opposite defendant's name to count as a vote for him was a question primarily for the trial court. (*People* v. *Town of Sausalito*, 106 Cal. 500 [39 P. 937].) The ruling is in accordance with section 7052 of the Elections Code providing that if for any reason it is impossible to determine a voter's choice for any office, his ballot shall not be counted for that office.

█ Exhibit J : A large blot appears on this ballot in the square opposite the name of the defendant. A similar large blot appears in the "No" square opposite the name of a candidate for the office of Justice of the Supreme Court. When the ballot is folded the blots apparently offset and match. There is no distinguishable stamped cross mark in either blot. There are no other marks in the squares concerning those offices. The ballot has several other blots. The same considerations apply here as to Ballot B, and no error appears in the ruling rejecting the ballot as a vote for the defendant since the trial court could reasonably conclude that any attempted choice was not clear (Elec. Code, § 7052), and was not a compliance with the requirements and instruction that the voter indicate his choice by stamping a cross (Elec. Code, § 3828).

█ Exhibit 30: The voter's choice of candidates for all offices was clearly indicated by a stamped cross, but the vote on each of the various propositions was indicated by a pencil check (V). The defendant seeks rejection of the ballot as a vote for the contestant on the ground that the unauthorized method of voting the propositions was a distinguishing mark which invalidated the entire ballot. Section 7054 of the Elections Code provides that no unauthorized mark shall invalidate the ballot unless "it appears that the mark was placed there by the voter for the purpose of identifying the ballot." In *Turner* v. *Wilson*, 171 Cal. 600 [154 P. 2], and *Sweetser* v. *Pacheco*, 172 Cal. 137 [155 P. 639], it was held that the foregoing provision, first enacted in 1903 by the addition of subdivision 4 to section 1211 of the Political Code, was intended to change the previously existing law which invalidated a ballot having a distinguishing mark. Pursuant to the present law, if the mark itself does not warrant an inference that it was designedly placed by the voter for the purpose of identifying his ballot, and in the absence of other evidence of intent in

that regard, the ballot may not be rejected on the ground that it bears a distinguishing mark. The trial court was justified in concluding, in the absence of other evidence, that the pencil marks alone did not indicate an intent to mark the ballot for the purpose of identifying it.

Ballot A-6 showed a vote for the contestant. On the reverse side it was marked ''spoiled'' in pencil in three places and the signatures of two clerks also appeared. There was nothing on the face of the ballot to indicate that it was spoiled, there was no testimony of the election officers regarding it, it was not among the spoiled ballots but was with the sealed ballots opened at the trial; nor was it cancelled in accordance with the requirements of section 5726 of the Elections Code. The trial court was justified in accepting it as a properly cast ballot. (*Morrison* v. *White,* 10 Cal.App.2d 266, 269-270 [52 P.2d 263]; *Lester* v. *Fairbairn,* 32 Cal.App.2d 411, 414 [89 P.2d 1091].)

Ballot 32: A stamped cross appeared in the square opposite each candidate's name, with a blot accompanying the cross opposite the contestant's name. This ballot was put aside on the defendant's objection. Later he withdrew his objection on the theory that the cross and blot opposite contestant's name was an offset from a blotted cross in the ''Yes'' square opposite the name of the candidate for the office of Justice of the Supreme Court. The trial court concluded however that the ballot showed a vote for each candidate and could not be counted for either. The defendant now contends that the vote should have been counted for him. Since there was a clearly distinguishable cross in each square the court was justified in its determination as to this ballot. (Elec. Code, § 7052.)

Ballot A-11: In designating his choices on this ballot the voter drew an ink cross with the broad blunt edge of the stamp or other instrument, each line of the cross being drawn diagonally across the entire square from one corner to the opposite but without regularity or uniformity. In some squares the marks were blurred and in others the crosses or parts thereof appeared double. If valid the ballot would have counted as a vote for the defendant. The cross obviously was not made with the stamp provided for the purpose and the trial court rejected the ballot because of the invalid method of marking. There was no error in this ruling. (*Lester* v. *Fairbairn, supra,* 32 Cal.App.2d at p. 413; *Morrison* v. *White,*

*supra,* 10 Cal.App.2d at p. 270.) As pointed out in the latter case the facts in *Evarts* v. *Weise,* 176 Cal. 218 [168 P. 122], relied on by the defendant, are distinguishable because there it did not clearly appear that the mark was not made with the required stamp and the trial court's ruling was upheld on that ground.

Ballot A-32 (absentee ballot): The only mark used on this ballot was a check (V) made with a lead pencil. The ballot was not marked as provided by law. (Elec. Code, §§ 3828, 5930, 5931(c).) The only permitted mark to indicate the voter's choice on absentee ballots is a cross made with a stamp, pen and ink, or indelible pencil. Failure to comply rendered the ballot invalid. (*Sweetser* v. *Pacheco, supra,* 172 Cal. 137.) The court was justified in rejecting the ballot which if valid would have counted for the defendant.

Ballot 46: This ballot clearly shows the use of a stamp with a cross impression, except that the impression was smaller and a portion of the lower end of the cross was cut off due either to an imperfection in the rubber stamp or the angle at which the stamp was used. The ballot showed a vote which was counted at the trial for the contestant. The defendant asserts that if Ballot A-11 showing a larger cross was properly rejected, this ballot showing the smaller mark should likewise be rejected. The conclusion does not follow, since there was no evidence to show either on or dehors the face of Ballot 46 that it was not the stamp provided for the purpose. (*Evarts* v. *Weise, supra,* 176 Cal. 218.)

The trial court disallowed six votes as illegal. Five of them were for the defendant and one for the contestant. Illegality was found because they were cast by nonresidents of the precincts. The defendant assumes to charge the conceded residential discrepancies to the mistake of the registration officers. The qualifications of electors stated in article II, section 1, of the state Constitution include residence in the election precinct. By section 70 of the Elections Code only qualified electors are entitled to exercise the voting franchise. The record clearly establishes for whom the disqualified persons cast their ballots. Registration does not add to or alter the qualifications fixed by the Constitution. (*Minges* v. *Board of Trustees,* 27 Cal.App. 15, 16-17 [148 P. 816].) The trial court's ruling on these votes was therefore correct. (*Russell* v. *McDowell,* 83 Cal. 70 [23 P. 183]; *Bush* v. *Head,* 154 Cal. 277, 281-282 [97 P. 512]; Elec. Code, § 8511, subd. (d).)

 The trial court refused to disallow the vote of another similarly disqualified voter, one Wesella, who testified that he voted for contestant, because he was impeached by pretrial inconsistent declarations and other testimony. The court's action was justified by the impeachment of the witness. (*Smith* v. *Thomas,* 121 Cal. 533 [54 P. 71].) The defendant asserts that the ruling was erroneous because the court deducted the vote for the contestant cast by the voter's wife, also disqualified; but we may perhaps observe as a matter of common knowledge that the choice indicated by one spouse is not conclusive as to the vote cast by the other.

 Two additional claimed disqualified persons, the Eslicks, husband and wife, who voted for contestant, were not on the defendant's list furnished to the contestant before trial and for that reason the court ruled that it could not find illegality. The defendant asserts error because their names were originally on the contestant's list, although later withdrawn. The court was apparently of the opinion that a name which was not on the defendant's list of illegal votes could not be contested by him. In *Norwood* v. *Kenfield,* 30 Cal. 393, 394, it was held that the receipt of evidence of alleged illegality of a vote for contestant was error where the voter's name was not on the list furnished before trial by the defendant to the contestant, citing the provision now included in section 8532 of the Elections Code. It was observed that that provision does not expressly require the defendant to furnish the contestant with such a list, but that where the defendant relies on illegal votes he thereby becomes a counter-contestant and every reason why the contestant is required to furnish such a list applies with equal force to the defendant. It was concluded that the intent was to require each party to give to the other notice of the votes which he intends to assail as illegal, that any other reading would result in a distinction where there ought to be none and give to one of the parties an undue advantage over the other. In *Smith* v. *Thomas,* 121 Cal. 533 [54 P. 71], the facts were the converse of those on the present record. The contestant attempted to show illegality in a vote not included in the list served by him on the defendant, although the voter's name was on the defendant's list served on the contestant. Arguments similar to those advanced here, including the knowledge of the illegality on the part of the opposing party, were rejected, the court saying that the purpose of the statute requiring notice had nevertheless not been

accomplished. Since in the present case the court ruled in compliance with the indicated requirement of the statute, there was no error.

The court invalidated the vote of one Albiez on a finding that after receiving his ballot and before entering the booth he went outside with his ballot in his possession and talked with the defendant, then reentered the polling place and cast his ballot for the defendant. The defendant concedes the facts found but contends that the court should have believed the testimony that there was no conversation as to how the voter should cast his ballot and that they could be seen by the officials through the glass in the door of the polling place. The Albiez vote was illegal because not cast in the manner required by law. (Elec. Code, § 5709; *Bush* v. *Head, supra,* 154 Cal. at pp. 281-282.) The section requires the voter on receiving his ballot ''forthwith, and without leaving the enclosed space,'' to retire alone to one of the booths. The defendant contends that since all the booths were occupied the voter could not forthwith retire to mark his ballot. There was no showing of compliance with the requirement to retire to a booth, at least as soon as one was available, without leaving the enclosed space. There is no error in the conclusion of invalidity as to this vote.

The court allowed the election officials' challenge to the Bennett husband and wife absentee ballots, which were not included in the official count, on the ground of lack of residence. The defendant claims these ballots should have been received and the votes counted for him. There was evidence that the Bennetts left Trinity County at the outbreak of World War II, and lived and worked in San Francisco since 1942; that they did not vote in Trinity County in the 1942 or 1944 elections; had not occupied a home or dwelling in the county since their removal, but on a few occasions had stopped at hotels for short stays registering from San Francisco. There was not here the evidence of permanent residence with periods of merely temporary sojourn therefrom which was shown in *People* v. *English,* 54 Cal.App. 90 [201 P. 145], relied on by the defendant. It cannot be said that the trial court erred in according weight to those elements which, applying the rules for determining residence (Elec. Code, § 5651 et seq.), required a ruling adverse to the defendant's contentions.

Finally it is urged that the trial court should have ruled that the polls at Lake Mountain Precinct were not kept

open from 7 a. m. to 7 p. m. on the day of the election and that the entire vote of that precinct should be invalidated. This precinct is in a sparsely settled mountain district and the voters, who have long distances to travel, customarily picnicked at the polling place during the noon hour. On this occasion the tables were cleared and the voting materials temporarily set aside on a stand or shelf. The testimony was conflicting as to whether Mr. and Mrs. Little, registered voters entitled to exercise their franchise but who did not do so on that day, appeared during the lunch hour and applied for their ballots. They were seen walking around, but there is evidence which could be believed by the court that they did not make a request to vote, that had they done so their request would have been granted. The polls were not in fact closed and there was evidence that the election materials were available for use. The trial court's finding that the polls were kept open is supported by the evidence.

Other contentions, such as lack of evidence in the record of the official count, do not merit detailed consideration. They are answered by the fact that the court and the parties conducted a recount of the ballots, and in the absence of error in the rulings on the ballots and the claimed illegal votes, there is no ground upon which to base a conclusion that the recount found by the trial court was incorrect.

The foregoing requires an affirmance of the judgment. It is so ordered.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.